**TITEFLEX CORPORATION**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Thomas Wagner and Thomas Wagner, Inc.**

National Union Fire Insurance Company of Pittsburgh, PA, Thomas Wagner and Thomas Wagner, Inc.

v.

Titeflex Corporation.

**Appeal of National Union Fire Insurance Company of Pittsburgh, PA.**

Superior Court of Pennsylvania.

Argued April 13, 2013.
Filed March 5, 2014.
Reargument Denied May 8, 2014.

See also, 2012 WL 5474762.

John J. Hatzell, Jr., Philadelphia and Laura A. Foggan, Washington, D.C., for appellant.

Andrew S. Gallinaro, Philadelphia and Patricia Barald, Washington, D.C., for Titeflex, appellee.

John Mattioni, Philadelphia, for Wagner, appellee.

BEFORE: PANELLA, J., OLSON, J., and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.

National Union Fire Insurance Company of Pittsburgh, PA (NUFIC) appeals from the order entered by the trial court on June 22, 2012, which ordered that NUFIC had a duty to defend Titeflex Corporation (Titeflex) in certain Underlying Actions pending in Montgomery County, Pennsylvania. Upon review, we affirm.

The trial court summarized the underlying facts as follows.

Titeflex manufactured a flexible connector that was installed and used at a Montgomery County gas station owned by Thomas F. Wagner and Thomas F. Wagner, Inc. (collectively, "Wagner").[1]

---

[1] Wagner was formerly made a party to this action, but [on September 27, 2010,] the [trial] court granted Wagner's motion to be dismissed from this case.

In the Spring of 1998, gasoline leaked from Wagner's property onto neighboring properties. As a result, many neighbors filed lawsuits against Wagner, Titeflex, and other manufacturers and installers of products at Wagner's gas station (collectively, the "Underlying Actions"). Wagner filed cross-claims

* Retired Senior Judge assigned to the Superior Court.

against Titeflex in the Underlying Actions.

Titeflex's primary insurer for the August 1, 1997–1998 policy year (and for prior and subsequent policy years) was Kemper under a Commercial General Liability Policy with a limit of $1 million per occurrence and an aggregate limit of $2 million. NUFIC was Titeflex's excess insurer during the August 1, 1997–1998 policy period (and in other years as well) under an umbrella policy with a limit of $50 million per occurrence and an aggregate limit of $100 million (the "Excess Policy").

Kemper initially provided a defense to Titeflex in the Underlying Actions pursuant to the terms of its primary policy. Kemper subsequently experienced financial difficulties, and Titeflex ultimately assumed and paid for its own defense in the Underlying Actions. In 2007, as part of a settlement of plaintiffs' claims against Titeflex in the Underlying Actions, Kemper and Titeflex together paid $1 million. In addition, NUFIC paid over $9 million towards the settlement under its Umbrella Policies. The Montgomery County court approved those portions of the settlement involving minors' claims and the claims of certain estates.

\*      \*      \*

Wagner's cross-claims were not part of the settlement, and they remain pending against Titeflex [in Montgomery County, PA].

Trial Court Opinion, 10/24/2012, at 1–3 (some footnotes omitted).

On March 30, 2007, Titeflex filed a complaint seeking, *inter alia,* a declaratory judgment in the Court of Common Pleas of Philadelphia County against NUFIC, Wagner, and the plaintiffs in the Underlying Actions.[1] A second amended complaint asserted claims for declaratory relief against NUFIC with regard to its duty both to defend and indemnify Titeflex, as well as claims for breach of contract and bad faith. Titeflex also sought declaratory relief as to Wagner, in that any declaratory relief as to indemnification would also be binding on Wagner. *See* Second Amended Complaint, 8/3/2009. Damages sought included compensatory damages, attorneys' fees, interest, and punitive damages. On October 28, 2009, NUFIC filed an answer, new matter, and counterclaims, asserting two claims for declaratory relief as to the exhaustion of the Kemper policies and scope of coverage, as well as claims for breach of fiduciary duty, restitution,[2] and breach of contract.

On November 16, 2010, Titeflex filed a motion for partial summary judgment on the issue of NUFIC's duty to defend it in the Underlying Actions. On December 17, 2010, NUFIC filed a cross-motion for partial summary judgment against Titeflex regarding lack of proof of exhaustion of the Kemper policies, its primary insurance.

In an order dated June 21, 2012 and entered on June 22, 2012, the trial court granted Titeflex's motion for partial summary judgment on the duty to defend issue. The trial court also denied NUFIC's motion for partial summary judgment on the issue that Titeflex was unable to dem-

---

1. On September 12, 2007, the trial court stayed the case pending the outcome of a parallel AAA arbitration proceeding with respect to a "Named Peril and Time Element Pollution Endorsement" in NUFIC's policies. That proceeding, which was resolved in favor of Titeflex, concluded on June 2, 2009, and on

August 3, 2009, upon stipulations of the parties, Titeflex filed a second amended complaint.

2. This counterclaim was dismissed on August 10, 2010, after Titeflex filed a motion for partial summary judgment on this issue.

onstrate exhaustion of the Kemper policies. In other words, it concluded that NUFIC was required to defend Titeflex against Wagner in the remaining portions of the Underlying Actions.

On July 13, 2012, NUFIC filed a notice of appeal to this Court from the trial court's order granting partial summary judgment in favor of Titeflex.[3]

### I.

■ We first consider Titeflex's assertion this appeal should be quashed because the order being appealed from is not an appealable order. Titeflex's Brief at 12–16. NUFIC counters that this order declaring that NUFIC has a duty to defend Titeflex is appealable pursuant to Pa. R.A.P. 341(b)(2) because it is expressly defined as a final order by statute. Specifically, NUFIC asserts that 42 Pa.C.S. § 7532 governs because it provides that "declarations shall have the force and effect of a final judgment or decree." NUFIC's Brief at 1; NUFIC's Reply Brief at 18–22.[4]

■ We address this issue first because "the appealability of a particular order 'implicates the jurisdiction of the [appellate] [c]ourt requested to entertain the question.'" *Giovagnoli v. State Civil Serv. Comm'n (Monroe Cnty. Children & Youth Servs.)*, 581 Pa. 655, 868 A.2d 393, 397 n. 4 (2005) (citing *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211, 212 (1985)).

In support of its position that this appeal is properly before this Court, NUFIC relies on two separate lines of cases. First, NUFIC points to an *en banc* decision of this Court in *Redevelopment Authority of Cambria County v. International Insurance Co.*, 454 Pa.Super. 374, 685 A.2d 581 (1996). NUFIC's Reply Brief, at 18–21. In *Redevelopment Authority*, the trial court ruled that the insurance company had a duty to defend the Redevelopment Authority of Cambria County in an underlying action, but did not rule on whether the insurance company had a duty to indemnify. The trial court observed that "a decision on the duty to indemnify could

---

**3.** On July 13, 2012, NUFIC also filed a motion for reconsideration with the trial court. In that motion, NUFIC sought for the trial court to reconsider the issues of jurisdiction and exhaustion; or, in the alternative, to amend the order with the language governing an interlocutory appeal by permission as it "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." *See* 42 Pa.C.S. § 702(b). On August 9, 2012, the trial court entered an order denying NUFIC's request for certification for an interlocutory appeal by permission, and stating that its June 22, 2012 order was a final determination with respect to NUFIC's duty to defend and an "immediate appeal of the Order would facilitate the resolution of the entire case and promote judicial efficiency because this court cannot proceed to address the remaining, related issue of indemnification until the underlying action terminates." Such language con-

firmed the trial court's view that the order being appealed from was a final order pursuant to Pa.R.A.P. 341(c).

On August 21, 2012, NUFIC filed a petition for review from the August 9, 2012 order, docketed at 85 EDM 2012, pursuant to Pa. R.A.P. 341(c)(4). On September 13, 2012, this Court entered a *per curiam* order denying the petition for review at 85 EDM 2012, concluding that the trial court's attempt to amend its June 22, 2012 order was too late as it was done outside the 30 day period prescribed by Pa.R.A.P. 341(c)(1).

On August 21, 2012, NUFIC also filed a notice of appeal, docketed at 2600 EDA 2012, from the orders of August 9, 2012 and June 22, 2012. On November 19, 2012, this Court entered a *per curiam* order granting Titeflex's motion to quash that appeal. Thus, at this juncture, the only appeal before us is the instant appeal.

**4.** The trial court did not offer an opinion on this issue.

await resolution of the underlying action[.]" *Id.* at 586. The insurance company appealed from that order, and the Redevelopment Authority filed a motion to quash the appeal. In declining to quash the appeal from that order as interlocutory, this Court reasoned that

> in light of the express statutory provision in Section 7532 of the Judicial Code which provides that orders entered in declaratory judgment actions shall have the force and effect of a final order, and in light of the fact that counsel for appellant have diligently attempted to perfect the jurisdiction of this Court via both the procedure applicable to direct appeals as well as the procedure applicable to interlocutory appeals by permission, we find that we are possessed of jurisdiction to proceed in this matter and, therefore, deny the motion to quash filed by appellee.

*Id.* at 587.

Titeflex responds asserting that *Redevelopment Authority* has been distinguished by a panel of this Court in *Bolmgren v. State Farm Fire and Cas. Co.*, 758 A.2d 689 (Pa.Super.2000). *See* Titeflex's Brief at 13–14. In *Bolmgren,* the insured brought a lawsuit against its homeowners' insurance company for a declaration of coverage as well as claims for repair and rehabilitation of the structure, attorneys' fees, costs, and punitive damages. The trial court granted the insured's motion for partial summary judgment, concluding that the insured was covered under the policy and had filed a timely claim. The insurance company filed an appeal from that order. This Court, addressing the issue of appealability *sua sponte,* held that "this partial adjudication does not become appealable merely because it is cast in the form of a declaratory judgment. [The insured's] complaint in this matter, although captioned a declaratory judgment, sought

ordinary civil relief and remedies in the form of a declaration of coverage and damages." *Bolmgren, supra,* at 691. Furthermore, this Court distinguished *Redevelopment Authority,* stating that the order in that case "was final because the trial court's determination that [the insurance company] had a duty to defend effectively ended the litigation" in the declaratory judgment action. *Id.* at 691 n. 1.

NUFIC also points to *Nationwide Mut. Ins. Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000) in support of its position. There, our Supreme Court held that a pretrial order declaring the rights of the parties is a final and appealable order. As our Supreme Court observed, "[s]ection 7532 simply states that an order in a declaratory judgment action that either affirmatively or negatively declares the rights and duties of the parties constitutes a final order." *Id.* at 818.

Titeflex responds that *Wickett* is no longer applicable because our Supreme Court has limited the breadth of the decision. For example, in *Pennsylvania Bankers Ass'n v. Pennsylvania Dep't of Banking,* 597 Pa. 1, 948 A.2d 790 (2008), certain banks filed a complaint against the Pennsylvania Department of Banking asserting different theories for declaratory relief, including several constitutional claims. The Commonwealth Court, having original jurisdiction over that matter, sustained the Department's preliminary objections in the nature of a demurrer with respect to some, but not all of the banks' constitutional claims, and the banks took an appeal. Our Supreme Court quashed the appeal, distinguishing the case from *Wickett,* as follows.

> The [b]anks ... argue that the Commonwealth Court's order constitutes a final, appealable order pursuant to *Wickett.* We find *Wickett* distinguishable, however, for the following reasons.

In *Wickett,* the trial court's order put certain defendants out of court by dismissing all of the plaintiff's claims against them. In so doing, the order prevented the plaintiffs from obtaining any relief against these parties. It would therefore be appropriate in this context to characterize the trial court's order as a final order under 42 Pa.C.S. § 7532 because it, in essence, declared that the plaintiffs did not have any viable theory of recovery against such defendants.

*Pennsylvania Bankers Ass'n,* 948 A.2d at 799. Therefore, our Supreme Court held that the order of the Commonwealth Court was not appealable "because [the banks] might still be able to obtain the relief they are seeking—i.e. a declaration that § 517 of the Credit Union Code is unconstitutional—based on one of their alternative theories pending before the Commonwealth Court[.]" *Id.* at 798. Thus, "the order dismissing their challenge under §§ 2 and 5 had no practical effect upon the ultimate decision in this case." *Id.*

As we have outlined, NUFIC has made three attempts to appeal this order, and the trial court believed that this was a final order pursuant to Pa.R.A.P. 341(c). Moreover, the cross-motions for summary judgment effectively ended the litigation in the declaratory judgment action until such time as the Underlying Actions are resolved. In this case, the trial court made several critical determinations in the declaratory judgment action. First, the trial court concluded that Titeflex had "exhausted" its primary insurance coverage because the spill was a single occurrence. Trial Court Opinion, 10/24/2012, at 7. Also,

the trial court determined that the claims that were settled in the Underlying Actions for both bodily injury and property damage are "of the type to which the NUFIC policy applies." *Id.* at 8. Based on these determinations, the trial court concluded that NUFIC had a duty to defend Titeflex for Wagner's cross-claims in the Underlying Actions.

After the trial court made these determinations, the declaratory judgment action was for all practical purposes resolved. The only conclusion left for the trial court to reach was the amount of indemnification, which could not be made until the Underlying Actions were completed. Once the trial court determined that NUFIC had a duty to defend Titeflex, the Underlying Actions could continue. Therefore, we conclude that this case is analogous to *Redevelopment Authority,*[5] and is not subject to the limitation on *Wickett* announced by the Supreme Court in *Pennsylvania Bankers Ass'n.*

## II.

■ Having determined that this appeal is properly before us, we now turn to the first issue raised by NUFIC on appeal. NUFIC contends that when the trial court allowed Wagner to absent himself from the instant litigation, the trial court deprived itself of subject matter jurisdiction pursuant to section 42 Pa.C.S. § 7540(a) and *Vale Chemical Co. v. Hartford Acci. & Indem. Co.,* 512 Pa. 290, 516 A.2d 684 (1986). NUFIC's Brief at 18. Titeflex responds that Wagner's request to absent himself from the litigation was only for the portion of the declaratory judgment action

5. Titeflex also asserts that *Redevelopment Authority* is distinguishable on the facts. In *Redevelopment Authority,* the trial court granted the request to certify the order for an interlocutory appeal by permission pursuant to 42 Pa.C.S. § 702(b). In this case, the trial court denied NUFIC's request to certify the order. *See* Titeflex's Brief at 14 n.12. We conclude that this is a distinction without a difference, as the trial court attempted to make the order a final order pursuant to Pa.R.A.P. 341(c), but did so too late.

regarding the duty to defend. Titeflex's Brief at 18.[6] Titeflex further asserts that Wagner was and always has been a party to the litigation. *Id.* at 19.

Section 7540(a) provides, in relevant part, that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding[.]" 42 Pa.C.S. § 7540(a). In *Vale,* our Supreme Court held that "the jurisdictional requirements of the Declaratory Judgments Act with respect to joinder of indispensable parties" were not satisfied where the tort plaintiff was not joined in the declaratory judgment action between an insurance company and the defendant in the underlying tort action. *Vale,* 516 A.2d at 688. It is well-settled that "the [tort] plaintiff has an interest in seeing that an insurance company pays the judgment against its insured." *Id.* at 686–87. Accordingly, the Supreme Court reasoned that "[e]ssential to the adversary system of justice, and one of the basic requirements of due process, is the requirement that all interested parties have an opportunity to be heard. Thus, all parties whose interest will necessarily be affected must be present on the record." *Id.*

On July 21, 2010, Wagner filed a motion for "stay, dismissal, or other appropriate relief" with the trial court. In that motion, Wagner asserted that "to force [it] to participate in resolution of [the duty to defend] issue as raised by the primary parties in the context of this later filed declaratory judgment action where the issue of coverage for liability for Wagner's cross-claims is not ripe for adjudication will seriously prejudice him by depriving him of the opportunity to have this issue decided

by jury trial." Wagner's Motion, 7/21/2010, at ¶ 41. Wagner further asserted that it "would also be required to expend substantial resources to participate fully in this litigation in which it has no real cognizable legal interest beyond filling a jurisdictional prerequisite of the real parties in interest, and prematurely litigate the issue relevant to the underlying tort action." *Id.* at ¶ 42.

Titeflex responded to Wagner's motion by stating that it recognized the burden that the litigation had on Wagner, acknowledged that Wagner is an indispensable party pursuant to *Vale,* and suggested that the trial court · issue an expedited briefing schedule to resolve the duty to defend issue on summary judgment to minimize the burden on Wagner. NUFIC responded by asserting that Wagner is an indispensable party to the action, and the trial court should stay the declaratory judgment action until the dispute between Titeflex and Wagner is resolved.

The trial court issued the following order granting Wagner's motion.

[T]he above-captioned matter with respect to [Titeflex's] claim against [NUFIC] for indemnification for the cross-claims of Wagner in the underlying tort action in the Court of Common Pleas of Montgomery County, . . . shall be and is hereby stayed pending the final determination in that Court of the amount of [Titeflex's] liability to Wagner as required by the terms of the subject [NUFIC] policy insuring Titeflex. Until further order of this Court, Wagner shall not be a party to the present case, and any findings and decisions of the Court with respect to the other claims shall not be binding on Wagner and shall have no preclusive effect with re-

---

**6.** Wagner filed a brief on appeal asserting that it is and has always been a party of

record in this case. Wagner's Brief at 2. Wagner also joins in Titeflex's Brief. *Id.*

spect to his claims in the [Underlying Actions].

Trial Court Order, 9/27/2010. Titeflex and Wagner interpreted this order to mean that Wagner would not have any interest or participation in the portion of the instant case concerning the issue of NUFIC's duty to defend Titeflex. Furthermore, the trial court stayed the portion of the lawsuit concerning the indemnification issue until resolution of Wagner's cross-claims against Titeflex in Montgomery County.

The trial court offered the following rationale for its decision granting "Wagner's motion to be dismissed from this case." Trial Court Opinion, 10/24/2012, at 1 n.1. It determined that the "statute simply requires that an interested party be made a party to the declaratory judgment action, not that it remain a party at all times." *Id.* "If, after being joined, the underlying plaintiff decides not to participate, the court may proceed without it." *Id.* We agree.

■ First, we point out that there is no question that when this litigation commenced in 2007 Wagner was a party to the litigation. It was also a party when the litigation recommenced in 2009 after the AAA arbitration proceedings had concluded. As our Supreme Court pointed out in *J.H. France Refractories Co. v. Allstate Ins. Co.*, 521 Pa. 91, 555 A.2d 797, 800 (1989), "this Court has held that once the jurisdiction of a court attaches, it continues until the cause is finally determined." Furthermore, in *J.H. France*, our Supreme Court considered whether parties that joined in the underlying action after a complaint for declaratory judgment is filed have to be joined as parties to the declaratory judgment action. It held that such a reading of *Vale* could not prevail for two reasons: 1) because once the jurisdiction of the court attaches, it remains through the entire litigation; and 2) because such a reading would defeat the purpose of declaratory judgment actions which are supposed to be a simple way of resolving conflicts. *J.H. France, supra,* at 800.

Our review of the case law reveals no case with facts analogous to those here, where all proper parties were joined at the time the litigation was commenced, but one party finds it too burdensome to participate in a portion of the declaratory judgment action—the duty to defend—in which it alleges it has no interest. However, based on our Supreme Court's interpretation of *Vale* in *J.H. France*, we conclude that the temporary absence of Wagner until the duty to defend issue is resolved does not deprive the trial court of jurisdiction as NUFIC contends. Accordingly, because the trial court had jurisdiction to enter the order in this case, we now reach the remaining issues raised on appeal.

## III.

■ NUFIC next contends that the trial court erred in its conflict of law analysis, as well as concluding that Pennsylvania law applies to this case. NUFIC's Brief at 21–29. Titeflex responds that the trial court correctly applied Pennsylvania law, and agrees with the trial court that regardless of whether Pennsylvania or New York law applied, the outcome would have been the same. Titeflex's Brief, at 20–34.

■ We point out that "[w]e must apply the choice of law rules of the forum state, Pennsylvania, to resolve this issue." *Compagnie des Bauxites de Guinee v. Argonaut–Midwest Ins. Co.*, 880 F.2d 685, 688 (3d Cir.1989). To resolve a conflict of law issue in a contract dispute, the trial court applies the rule announced by our Supreme Court *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964).

*See Budtel Associates, LP v. Cont'l Cas. Co.*, 915 A.2d 640, 643 (Pa.Super.2006).

[T]he first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states. If no conflict exists, further analysis is unnecessary. If a conflict is found, it must be determined which state has the greater interest in the application of its law. Weighing these interests requires a further determination as to which state had the most significant contacts or relationships with the insurance contract.

*Budtel Associates, LP*, 915 A.2d at 643. Furthermore, "[u]nder general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the [c]ourt should avoid the. choice-of-law question." *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir.1997).

Instantly, the trial court concluded that "Pennsylvania's 'cause'[7] approach and New York's 'unfortunate event'[8] approach to determining 'occurrences' may, in some instances[,] produce different results. However, in this case, where one unfortunate event apparently caused multiple injuries, both states' courts would recognize only one occurrence." Trial Court Opinion, 10/24/2012, at 6 n.17 (footnotes added). We agree.

NUFIC asserts that rather than looking at the cause test or unfortunate event test, the trial court should have considered the different approaches between New York and Pennsylvania in allocating losses that span multiple years to determine whether an actual conflict of law exists. In support of its position, NUFIC relies on *Consolidated Edison of New York, Inc. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 746 N.Y.S.2d 622, 774 N.E.2d 687 (2002). In that case, corporate predecessors of Consolidated Edison owned and operated a manufactured gas plant in New York. Consolidated Edison eventually sold the site to Anchor Motor Freight who, in 1995, notified Consolidated Edison that there was environmental contamination at the site. Consolidated Edison agreed to clean up the site and commenced a declaratory judgment action against the 24 insurers that had issued it general liability policies during the years of the contamination. Consolidated Edison asserted that it should be able to elect any one year within the coverage period and allocate all liability to that insurer. The Court of Appeals of New York disagreed, and instead held that in situations where there is a continuous harm spanning many years, the insurance coverage should be prorated among the insurers.

NUFIC contrasts that holding with the holding of our Supreme Court in *J.H. France Refractories Co. v. Allstate Ins.*

---

**7.** *See Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286 (2007) (holding that under the "cause" approach, parents' negligence in allowing son's access to gun causing injuries to six separate victims during one shooting spree was one occurrence under Pennsylvania law).

**8.** New York follows the "unfortunate event" test, which was first set forth in (*Arthur A. Johnson Corp. v. Indemnity Ins. Co. of No. Am.*, 7 N.Y.2d 222 [196 N.Y.S.2d 678, 164

N.E.2d 704 (N.Y.1959) ] ), for determining the number of occurrences under a liability policy. In that case, the Court of Appeals of New York held that where one unprecedented rainfall caused two separate walls to fall, "there were two unforeseen events separated in time and place, and therefore, two separate 'accidents.' " *ExxonMobil Corp. v. Certain Underwriters at Lloyd's, London*, 15 Misc.3d 1144, 841 N.Y.S.2d 819, 2007 WL 1615102, *4 (N.Y. 2007).

*Co.,* 534 Pa. 29, 626 A.2d 502, 510 (1993). In that case,

> J.H. France, a manufacturer and distributor of products containing asbestos, sought a declaratory judgment with respect to its insurers' duties to defend and indemnify against asbestos-related personal injury claims.... [I]t was determined that the claimants' injuries spanned multiple policy periods as well as periods in which J.H. France did not have insurance. Thus, the Pennsylvania courts were faced with the ... question ... [of] how to allocate liability among multiple insurers and the insured for asbestos-related personal injuries. The trial court, holding for the defendant insurers, "prorated the obligations of all insurers whose policies were in effect throughout the development of the disease, including J.H. France as a self-insurer during periods when it did not purchase liability insurance." 606 A.2d at 506. On appeal, however, the Supreme Court of Pennsylvania reversed. J.H. France, the Court held, could recover the full extent of its loss from any insurer or insurers on the risk, subject only to those insurers' policy limits. *See id.* at 508–09.

*U.S. Fid. & Guar. Co. v. Treadwell Corp.,* 58 F.Supp.2d 77, 94 (S.D.N.Y.1999).

The aforementioned cases concern which policy or policies were triggered, as opposed to whether there was one or more occurrence under the policy or policies at issue.

> Our Supreme Court has thus far adopted the "multiple trigger" theory to determine the occurrence of injury for insurance coverage purposes only in cases involving toxic torts. *See J.H. France Refractories v. Allstate Insurance Co.,* [534 Pa. 29, 626 A.2d 502 (1993)]. The "multiple trigger" theory is applied in latent disease cases, like

asbestosis or mesothelioma, because such injuries may not manifest themselves until a considerable time after the initial exposure causing injury occurs. The overriding concern in latent disease cases is that application of the *D'Auria* [*v. Zurich Insurance Company,* 352 Pa.Super. 231, 507 A.2d 857 (1986)] "first manifestation" rule would allow insurance companies to terminate coverage during the long latency period (of asbestosis); effectively shifting the burden of future claims away from the insurer to the insured (manufacturers of asbestos), even though the exposure causing injury occurred during periods of insurance coverage.

*Consulting Engineers, Inc. v. Ins. Co. of N. Am.,* 710 A.2d 82, 87 (Pa.Super.1998) *aff'd,* 560 Pa. 247, 743 A.2d 911 (2000). Because the instant case does not concern a toxic tort, but instead emanates from injuries alleged to have occurred as a result of one specific event, a gasoline leak, we conclude that NUFIC's argument is without merit. Accordingly, we hold that the trial court properly determined that there was a false conflict in this case, and did not err in applying Pennsylvania law.

■ We now turn to NUFIC's final three issues, which we consider together as they are interrelated:

3. Whether a court may impose a duty to defend upon an excess insurer where there are disputed factual issues over whether the insured properly has exhausted underlying coverage?

4. Whether multiple limits of primary insurance are available for any single occurrence triggering multiple years and policy periods where the primary policies confirm that their "per occurrence" limits are available on an annual basis?

5. Whether, in light of the foregoing issues, the trial court erred in holding that [NUFIC] had a duty to defend

Titeflex under its excess coverage where, as a matter of governing New York law, Titeflex cannot demonstrate exhaustion of any primary policy limit, or even under Pennsylvania law, where its prior settlement with its primary insurer renders it responsible for those obligations?

NUFIC's Brief at 3.[9]

We keep in mind the following principles in reviewing this trial court order granting partial summary judgment.

> In examining this matter, as with all summary judgment cases, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. In order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Finally, we stress that summary judgment will be granted only in those cases which are clear and free from doubt. Our scope of review is plenary.

*Washington v. Baxter,* 553 Pa. 434, 441, 719 A.2d 733, 737 (1998) (citations and quotation marks omitted). Our court will reverse a trial court's grant of summary judgment only upon an abuse of discretion or error of law. *Murphy v.*

*Duquesne University of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001). *Nationwide Mut. Ins. Co. v. West,* 807 A.2d 916, 918–19 (Pa.Super.2002).

Furthermore, we bear in mind the principles governing an insurer's duty to defend an insured.

An insurer's duty to defend is broader than its duty to indemnify. It is a distinct obligation, separate and apart from the insurer's duty to provide coverage. An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy. As long as the complaint might or might not fall within the policy's coverage, the insurance company is obliged to defend. Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.

The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy. In making this determination, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured. Indeed, the duty to defend is not limited to meritorious actions; it even extends to

9. We have already concluded that there was one occurrence in this case; and, therefore any conflict between New York and Pennsylvania law was a false conflict. To the extent that NUFIC's arguments continue to rely on New York law, specifically that Titeflex has not exhausted its primary insurance, such argument is now moot because NUFIC's entire exhaustion argument is premised on the finding of more than one occurrence in this case.

actions that are groundless, false, or fraudulent as long as there exists the possibility that the allegations implicate coverage.

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584, 2 A.3d 526, 540–41 (2010) (internal quotations and citations omitted).

Instantly, the trial court determined that Wagner's cross-claims fall squarely within the four corners of the insurance policy.[10]

In his cross-claims, Wagner alleges that Titeflex (and others) must compensate him for damage to his property, loss of gasoline, destruction of Wagner's business, and the environmental clean-up costs for which he is or will be found liable. Some of Wagner's claimed damages may have occurred in years other than the 1997–1998 policy year, and some may not involve claims for covered injuries. However, at least some of Wagner's cross-claims are for property damage occurring in 1998. Therefore, at least some of Wagner's cross-claims are potentially covered by the terms and conditions of NUFIC's Excess Policy.

Trial Court Opinion, 10/24/2012, at 5.

As an excess insurer, NUFIC's duty to defend is only triggered once Titeflex has exhausted its underlying coverage. NUFIC asserts that Titeflex has not exhausted its underlying coverage, as the occurrence at issue triggered many policy years. However, Titeflex counters it has exhaust-ed the one and only Kemper policy at issue.

The trial court concluded that

[t]he 1997–1998 Kemper Policy has an "Each Occurrence Limit" of $1 million. The "Each Occurrence Limit" is the most Kemper will pay for the sum of [damages and medical expenses] because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence.'

\*     \*     \*

It does not matter if the spill's effects spanned many years and many policies and generated multiple claims. It is still one occurrence subject to a $1 million limit for all claims arising out of it.

Trial Court Opinion, 10/24/2012, at 6–7. We agree.

Based on our foregoing analysis of the conflict of law issue, where we concluded that Pennsylvania does not recognize the multiple trigger theory for this type of case, we conclude that Titeflex has exhausted the one and only policy at issue in this case.

As an example in support of its argument, NUFIC points out that the one million dollars that Titeflex has paid "do[es] not and cannot fall within a single policy and particular annual period thereof." NUFIC's Brief at 32. NUFIC contends that some individuals who received portions of the settlement were not born until one or two years after the 1997–1998 policy period ended.[11] Thus, NUFIC argues

---

**10.** The relevant language of the policy issued by NUFIC states as follows:

We shall have the right and duty to defend any claim or suit seeking damage covered by the terms and conditions of this policy when:

1. The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and Limits of Insurance of any other underlying insur-ance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies[.]

Trial Court Opinion, 10/24/2012, at 4–5 (footnotes omitted); NUFIC's Brief at 30–31; Titeflex's Brief at 42. There is no dispute that the only policy listed as an underlying policy is the Kemper policy.

**11.** One such plaintiff is Jared Glass, who was "born in 2000, several years after the gasoline

"[i]t is plainly impossible that these claimants could have suffered their alleged bodily injury during the 1997–1998 policy period and the portions of the settlement payment representing their claims cannot be allocated to that period." NUFIC's Brief at 33. Titeflex responds that this alleged injury, which did not manifest until Jared Glass was born and diagnosed with autism, actually occurred from the exposure of Jared Glass's mother to the gasoline leak during the 1997–1998 period. Titeflex's Brief, at 27 n.25.

The 1997–1998 policy covered any "occurrence" that happened during that time period. "Kemper has only obligated itself to pay a total of $1 million per any one 'Occurrence.'" Trial Court Opinion, 10/24/2012, at 7. Thus, even though some alleged injuries did not manifest until years later, as in the case of Jared Glass, only the policy of the year of the occurrence is implicated. Despite NUFIC's arguments to the contrary, we cannot conclude that any other reading of the Kemper policy or its own policy is reasonable. All of NUFIC's additional arguments focus either on New York law, which we have already concluded does not apply in this case, or on the multiple trigger theory, which, again, we have concluded does not apply in this case. Accordingly, for the foregoing reasons, we hold that NUFIC is not entitled to relief on any of its issues.

Order affirmed.

Judge OLSON concurs in the result.

spill occurred, and has suffered personal injuries allegedly resulting from the spill." Trial

Court Opinion, 6/22/2012, at 2.