J-A31043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BL PARTNERS GROUP, L.P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| INTERBROAD, LLC, | |
| Appellant | No. 465 EDA 2016 |

Appeal from the Order January 7, 2016
in the Court of Common Pleas of Philadelphia County Civil Division
at No(s): May Term, 2015 - Case No. 02432

BEFORE: BENDER, P.J.E., DUBOW, J., and FITZGERALD, J.[*]

MEMORANDUM BY FITZGERALD, J.: **FILED JUNE 15, 2017**

Appellant, Interbroad, LLC, appeals from the order entered in the Philadelphia County Court of Common Pleas granting judgment on the pleadings in favor of Appellee, BL Partners Group, L.P., in Appellee's declaratory judgment action regarding the interpretation of a lease. Appellant contends that the trial court erred in concluding that a termination provision in the lease is unambiguous. We agree and therefore reverse and remand for further proceedings.

The trial court summarized the facts and procedural posture of this case as follows:

> In a lease dated January 1, 2000, the Estate of Samuel Rappaport ("the Rappaport Estate"), the lessor, gave [Appellant], the lessee, the right to use the rooftop of 231 S. Broad Street, Philadelphia, Pa. ["the Building"] for a

_____
[*] Former Justice specially assigned to the Superior Court.

billboard/outdoor advertising sign. The lease term commenced on January 1, 2000 and is scheduled to terminate on April 11, 2094.[1] The lease gave the Rappaport Estate the following termination rights at Section 7:

> "In the event that Lessor's building is damaged by fire or other casualty and Lessor elects not to restore such building, or Lessor elects to demolish the building, Lessor may terminate the Lease upon not less than 60 days notice to Lessee upon paying Lessee ten (10) times the net operating income earned by Lessee from the Advertising Structures or the Premises for the immediately preceding twelve (12) month period."[2]

When [Appellee] acquired the [Building], the [Building] was subject to the lease with [Appellant]. On April 7, 2015, [Appellee] sent a letter to Appellant stating that it had taken assignment of the lease, had elected to demolish the [Building] and was terminating the lease effective sixty (60) days from that date. In the termination notice, [Appellee] acknowledged its obligation, upon terminating the Lease, to pay [Appellant] ten (10) times the net operating income earned by Appellant during the immediately preceding twelve (12) month period. Despite [Appellee's] demand, [Appellant] refused to provide its Net Operating Income for the immediately preceding twelve (12) month period prior to the Termination Notice or any supporting documentation.

In a letter dated May 8, 2015, [Appellant] responded to the Termination Notice and disagreed with [Appellee]'s interpretation of the lease. [Appellant] took the position that [Appellant] "had the right to quiet enjoyment of the

---

[1] Appellant provided $1 in consideration for the lease.

[2] For the purposes of this appeal, we refer to the clause "In the event that the Lessor's building is damaged by fire or other casualty" as the "Casualty Clause," the clause "Lessor elects not to restore such building" as the "Restoration Clause," and the clause "Lessor elects to demolish the building" as the "Demolition Clause."

rooftop of the building located at 231 South Broad Street . . . to the completion of the Lease on April 1, 2094." On May 21, 2015, [Appellee] initiated the instant action seeking declaration that it has the right to terminate the lease. In addition to its claim for declaratory judgment, [Appellee] also asserts a claim for breach of contract based on [Appellant]'s refusal to recognize [Appellee]'s termination of the lease. On June 18, 2015, [Appellant] answered [Appellee]'s complaint and filed a counterclaim for its own declaratory judgment. [Appellant] claims that under the lease, [Appellee] does not have the right to terminate. On July 2, 2015, [Appellee] filed a reply to [Appellant]'s new matter and counterclaim. On August 4, 2015, [Appellant] filed a motion for judgment on the pleadings. On August 25, 2016, [Appellee] filed a cross motion for judgment on the pleadings.

On November 9, 2015, after oral argument, [the trial court] granted [Appellee]'s motion for judgment on the pleadings and denied [Appellant]'s cross motion. On November 19, 2015, [Appellant] filed a motion seeking clarification of this court's November 9, 2015 Order. On December 9, 2015, the Order of November 9, 2015 was vacated and a new hearing was scheduled. On January 7, 2016, the court entered a new Order granting [Appellee]'s motion for judgment on the pleadings and denying [Appellant]'s motion for judgment on the pleadings. We specifically declared that the January 1, 2000 lease agreement allowed [Appellee] to terminate the lease if Appellee elects to demolish the [B]uilding . . . for any reason. [Appellee]'s breach of contract [action] was permitted to proceed.[3] On February 3, 2016, Appellant appealed.

---

[3] Although not raised by the parties, we note that the declaratory judgment at issue constitutes a final, appealable order. *See Riley v. Framers Fire Ins. Co.*, 735 A.2d 124, 127 (Pa. Super. 1999) ("[T]he appealability of an order is a question of jurisdiction and may be raised *sua sponte.*"). "[A] order in a declaratory judgment action that either affirmatively or negatively declares the rights and duties of the parties constitutes a final order." *Nationwide Mut. Ins. Co. v. Wickett*, 763 A.2d 813, 818 (Pa. 2000) (citing 42 Pa.C.S. § 7532 and Pa.R.A.P. 341(b)(2)); *see also Pa. Bankers Ass'n v. Pa. Dep't of Banking*, 948 A.2d 790, 798 (Pa. 2008) (holding

Trial Ct. Op., 6/3/16, at 1-3. Appellant timely filed a court ordered Pa.R.A.P. 1925(b) statement on February 24, 2016.

The trial court issued a responsive opinion on June 3, 2016. The trial court opined that the plain language of Section 7 provides Appellee with the right to terminate in the event that it "elects to demolish the [B]uilding for any reason." Trial Ct. Op. at 7. The trial court emphasized the Casualty and Restoration Clauses (*i.e.*, "In the event that the Lessor's building is damaged by fire or other casualty" and "Lessor elects not to restore such building," respectively) are connected by the word "and," and thus the Casualty Clause operates as a condition precedent to the operation of the Restoration Clause. Therefore, the trial court explains, both clauses read together create a right to terminate the lease in the event of a casualty when Appellee elects not to

_____

declaratory judgment was interlocutory and not an appealable final order "because [Appellant's] might still be able to obtain the relief they are seeking . . . based on one of their alternative theories pending before the Commonwealth Court, the order dismissing their challenge . . . had no practical effect upon the ultimate decision in this case."). Instantly, the order appealed from resolved the ultimate issue of the parties' rights under the lease, and Appellant does not have any other viable theory of recovery. Accordingly, the declaratory judgment at issue constitutes a final, appealable order. *See Wickett*, 763 A.2d at 818; *Pa. Servs. Corp. v. Texan Eastern Transmission, LP*, 98 A.3d 624, 626 n.1 (Pa. Super. 2014); *Titeflex Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 88 A.3d 970, 974-976 (Pa. Super. 2014).

Subsequent to this appeal, the Pennsylvania Supreme Court amended Pa.R.A.P. 311 and 341 and addressed the appealability of orders entered under the Declaratory Judgment Act. *See* Pa.R.A.P. 311(a)(8), 341 (eff. Apr. 1, 2016). The amended rules, however, do not apply in this case.

restore the building. Conversely, the trial court reasoned that the comma and "or" preceding the Demolition Clause (*i.e.*, "Lessor elects to demolish the building") indicate the Demolition Clause provides an independent basis for termination irrespective of the Casualty Cause. Trial Ct. Op. at 5-6 (citing John E. Warriner, English Grammar and Composition (10 ed. 1965.), at 445). The trial court thus concluded that the Casualty Clause does not preclude Appellee's right to terminate the lease upon demolition of the Building even if a casualty has not occurred. Further, the trial court noted that the lease as a whole, including the ninety-four-year lease term and Appellant's nominal consideration, weighs in favor of allowing Appellee to terminate the lease upon its election to demolish the Building in order to exercise its property rights freely. *Id.* at 7.

Appellant raises the following issues for our review:

> 1. Did the trial court err in holding as a matter of law that the Lease provision at issue gives [Appellee] the right to terminate the Lease by electing to demolish the building for any reason?
>
> 2. To the extent that the trial court did not accept [Appellant's] interpretation of the Lease, did the trial court err in failing to hold that the Lease is ambiguous?

Appellant's Brief at 5. We consider Appellant's questions jointly.

Appellant first argues that the plain language of Section 7 permits Appellee to terminate the lease only in the event of fire or other casualty. In support, Appellant asserts the drafter's use of two commas to set off the Demolition Clause indicates that the Demolition Clause is nonrestrictive.

Appellant further notes that the parallel structure of the Demolition Clause and the Restoration Clause—both of which begin with the phase "Lessor elects"— evinces the drafter's intent that the Casualty Clause is a condition precedent to the Restoration Clause and the Demolition Clause. Appellant also suggests that interpreting the Demolition Clause as nonrestrictive is necessary to clarify that if a casualty were to occur, and Appellee elected to rebuild the Building after demolition, such action would not constitute "restoring" under the lease. This distinction is important because, under the terms of the lease, the act of "restoring" the Building would preclude Appellee from terminating the lease.[4]

Moreover, Appellant argues that the trial court erred in finding that Appellant's suggested reading of Section 7 was incorrect in light of the lease as a whole. According to Appellant, it was the intent of the parties to draft a lease agreement favorable to Appellant, and the drafter of the lease could have fashioned a clear unilateral termination provision for Appellee that was similar to the termination provision provided to Appellant.[5]

Lastly, although Appellant claims that Section 7 clearly limits Appellee's right to terminate the lease to the occurrence of a fire or other

---

[4] Under Section 7 Appellee can terminate the lease in the event of a fire or other casualty as long as "Lessor elects not to restore such building."

[5] Appellant specifically refers to another provision in the lease that prohibits Appellee from unilaterally terminating the lease even if Appellant defaults on its obligations to maintain the advertising structure, and permits Appellant to terminate the lease unilaterally.

casualty, Appellant alternatively claims that the trial court erred by failing to conclude Section 7 was ambiguous. Following our review, we are constrained to conclude that Section 7 is ambiguous.

Our standard of review is well settled:

> Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.
>
> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.
>
> We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 185 (citation omitted).

A lease is a contract and must be interpreted according to the principles of contract law. *Stein Revocable Trust v. Gen. Felt Indus.*, 749 A.2d 978, 980 (Pa. Super. 2000).

The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

*Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1046 (Pa. Super. 2015) (citation and original emphasis omitted). Whether a contract contains ambiguous terms is a question of law. *Walton v. Phila. Nat. Bank*., 545 A.2d 1383, 1388 (Pa. Super. 1988).

"The pertinent dictionary definition of the word 'or' is a 'choice between alternative things, states, or courses.'" *Frenchak v. Sunbeam Coal Corp.*, 495 A.2d 1385, 1387 (Pa. Super. 1985) (citing Webster's Unabridged Third New International Dictionary) (holding lease provision in question provided for multiple means of termination due to use of the word "or"), *disapproved of on other grounds by Hutchinson v. Sunbeam Coal*

*Corp.*, 519 A.2d 385 (Pa. Super. 1986). Further, "[i]n English grammar, the placement of a comma before the word 'or,' joins two independent clauses." Warriner, English Grammar and Composition at 445.

A "nonrestrictive" phrase is separated by commas and is construed as a parenthetical, supplemental to the main clause. *Cash Am. Net of Nev., LLC v. Com., Dept. of Banking*, 8 A.3d 282, 293 n.4 (Pa. 2010) (citing William Strunk, Jr. and E.B. White, *The Elements of Style* (4th ed. 2000) at 4);[6] *see also Tooey v. AK Steel Corp.*, 81 A.3d 851, 870 (Pa. 2013). Also germane to this case is the grammatical use of parallel structure. *See Chester Water Auth. v. Pa. Pub. Util. Comm's*, 868 A.2d 384, 390-91 (Pa. 2005).[7]

---

[6] In *Cash Am. Net of Nev.*, the Pennsylvania Supreme Court addressed the following definition of a lender who must be licensed to conduct business: "[N]o person shall engage . . . in this Commonwealth**, either as principal, employe, agent or broker,** in the business of negotiating or making loans or advances of money on credit . . . ." *Cash Am. Net of Nev.*, 8 A.3d at 285 (citation omitted) (emphasis added). The Court concluded that the phrase "principal, employe, agent or broker" was nonrestrictive and did not "restrict the meaning of 'in this Commonwealth . . . ." *Id.* at 293. Rather "[t]he nonrestrictive phrase modifies the preceding word 'person.'" *Id.* Thus, the Court rejected a lender's suggestion that "a lender is not in this Commonwealth if it does not have a 'principal, employee, agent, or broker' in Pennsylvania." *Id.* at 293.

[7] *In Chester Water Auth.*, the Pennsylvania Supreme Court considered the following provision:

> For the purpose of enabling the commission to make such finding or determination [i.e., the award of a certificate of public convenience], it shall hold **such hearings**, which shall be public, and, before or after hearing, it may make

Further, "[a]s a general rule, [t]he law will not imply a different contract than that which the parties have expressly adopted." ***Clearfield Volunteer Fire Dep't v. BP Oil, Inc***., 602 A.2d 877, 879 (Pa. Super. 1992) (citation omitted). However, where courts are called upon to interpret ambiguities in lease agreements, "it is sound policy to adopt an interpretation which does not impose on land undue restrictions tending to deprive the owner of the customary rights, privileges and incidents of ownership." ***Id.*** at 880 (footnote omitted).

Instantly, we cannot agree with the trial court that the intent of the contracting parties was made clear by the use of the comma and the word

> such inquiries, physical examinations, valuations, and investigations, and may require such plans, specifications, and estimates of cost, **as it may deem necessary or proper in enabling it to reach a finding or determination**.

***Chester Water Auth.***, 868 A.2d at 390 (citation omitted). The Court concluded:

> While one could conceive an argument that the qualifying language "as it may deem necessary or proper in enabling it to reach a finding or determination" pertains only to the clause that immediately precedes it (the requirement of plans, specifications and estimates of costs), this would not explain the General Assembly's parallel usage of the qualifier "such" in conjunction with each of the preceding clauses, including the relevant one prescribing the conduct of hearings.

***Id.*** 390-91 (footnote omitted). The Court thus held that the authority was not required to convene a hearing on every application for an award of a certificate of public convenience.

- 10 -

"or" preceding the Demolition Clause. Although we agree with the general proposition that a comma followed by the term "or" separates two independent clauses, it does not follow that the Demolition Clause must be read separately from the Casualty Clause. In reaching its interpretation, the trial court essentially reads into the Demolition Clause a second conditional term: *i.e.*, "**In the event that** Lessor's building is damaged by fire or other casualty and Lessor elects not to restore such building, or **[in the event that]** Lessor elects to demolish the building, Lessor may terminate the Lease . . . ."

Similarly, we do not find Appellant's interpretation of Section 7 to be dispositive. Appellant focuses on the commas preceding and following the Demolition Clause to suggest that the Demolition Clause is nonrestrictive. However, it is equally plausible that the comma preceding the Demolition Clause signals the creation of an independent basis for termination. Moreover, the comma following the Demolition Clause could also be interpreted as a separation between a conditional "if" clause and the ensuing "then" clause (*i.e.*, if Appellee elects to demolish the building, then it may terminate).[8]

---

[8] Section 10 and 12, for example, contain conditional clauses that are set off by commas. Section 10 reads, in part: "In the event of condemnation or the threat of condemnation or acquisition by any lawful governmental authority of the demised property**,** . . . ." R.R. at 97a (emphasis added). Section 12 contains the following conditional clause: "Should the electrical service to the Advertising Structures covered under this Lease be reduced by the request

In sum, we are constrained to conclude that Appellee's right to terminate the lease upon its election to demolish the building cannot be determined definitively from the particular terms, grammar, or structure of Section 7.[9]  The parties and the trial court advance reasonable interpretations of Section 7.  Accordingly, we conclude that Section 7 is ambiguous, and judgment on the pleadings was not appropriate.  *See Ramalingam*, 121 A.3d at 1046.  Consequently, we find that Section 7 is subject to a contextual analysis, including the use of extrinsic evidence.[10] *See id*.  Thus, we reverse the order granting judgment on the pleadings and remand for the trial court to consider extrinsic evidence to aid the interpretation of Section 7.

Order reversed.  Case remanded.  Jurisdiction relinquished.

_____

or order of any duly constituted governmental agency, or by the electrical company**,** . . . .*"  **Id.** at 98a (emphasis added).

[9] We note that Appellee asserts Appellant waived a claim that the Lease was ambiguous.  However, although Appellant filed a cross-motion for judgment on the pleadings, it preserved its claim that the Lease could be construed as ambiguous in its response to Appellee's motion for judgment on the pleadings.  In any event, our review of the trial court's interpretation of the Lease is plenary.  Therefore, we decline to find waiver.

[10] The trial court suggested that Appellant's interpretation of Section 7 constituted an "unreasonable and unwarranted restriction on Appellee's property rights."  Trial Ct. Op. at 17.  However, the trial court rested its decision on the plain language of Section 7 and elected not to find Section 7 ambiguous.  *Id.*; *cf. Clearfield Volunteer Fire Dep't v. BP Oil, Inc*., 602 A.2d at 879-80.  The finder of fact will have an opportunity to revisit such policy consideration following a further examination of extrinsic evidence regarding the intent of the parties when entering the lease.  *Id.*

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/15/2017</u>