2023 PA Super 145

| | | |
|---|---|---|
| MICHAEL D. TOTH AND LINAWATI TOTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN E. TOTH, EUGENE W. TOTH, MARIE TOTH, AND LEARNING SCIENCES INTERNATIONAL, LLC | : | No. 266 WDA 2022 |
| | : | |
| | : | |
| APPEAL OF: BRYAN E. TOTH, EUGENE W. TOTH, AND MARIE TOTH | : | |

Appeal from the Order Entered February 15, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-000372

| | | |
|---|---|---|
| MICHAEL D. TOTH AND LINAWATI TOTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN E. TOTH, EUGENE W. TOTH, MARIE TOTH, AND LEARNING SCIENCES INTERNATIONAL, LLC | : | No. 267 WDA 2022 |
| | : | |
| | : | |
| APPEAL OF: BRYAN E. TOTH, EUGENE W. TOTH, AND MARIE TOTH | : | |

Appeal from the Order Entered February 15, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-000372

| | | |
|---|---|---|
| MICHAEL D. TOTH AND LINAWATI TOTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |

J-A06019-23
J-A06020-23

|  |  |  |
|---|---|---|
| BRYAN E. TOTH, EUGENE W. TOTH, MARIE TOTH, AND LEARNING SCIENCES INTERNATIONAL, LLC | : : : : : : | No. 403 WDA 2022 |
| APPEAL OF: BRYAN E. TOTH, EUGENE W. TOTH, AND MARIE TOTH | : : : | |

Appeal from the Order Entered April 5, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): G.D. 21-000372

---

|  |  |  |
|---|---|---|
| MICHAEL D. TOTH AND LINAWATI TOTH | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| BRYAN E. TOTH, EUGENE W. TOTH, MARIE TOTH, AND LEARNING SCIENCES INTERNATIONAL, LLC | : : : : : | No. 846 WDA 2022 |
| APPEAL OF: BRYAN E. TOTH, EUGENE W. TOTH, AND MARIE TOTH | : : | |

Appeal from the Order Entered July 21, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-000372

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.*

OPINION BY NICHOLS, J.:                    **FILED: August 1, 2023**

---

* Retired Senior Judge assigned to the Superior Court.

- 2 -

Appellants Bryan E. Toth, Eugene W. Toth, and Marie Toth appeal from four separate orders: the February 15, 2022 order granting partial summary judgment in favor of Appellees Michael D. Toth and Linawati Toth (266 WDA 2022); the February 15, 2022 order denying Appellants' motion for summary judgment against Appellees (267 WDA 2022); the April 5, 2022 order granting Appellees' petition to dissolve Learning Sciences International, LLC, (LSI) (403 WDA 2022); and the July 21, 2022 order appointing a custodian for LSI (846 WDA 2022).[1]  Appellants contend that the trial court erred in granting summary judgment in favor of Appellees, ordering the dissolution of LSI, and in appointing a custodian.  After review, we affirm the order on appeal at 266 WDA 2022, affirm the order on appeal at 267 WDA 2022, vacate the order on appeal at 403 WDA 2022 and remand for further proceedings consistent with this opinion, and vacate the order on appeal at 846 WDA 2022.

The trial court summarized the relevant facts and procedural history of this matter as follows:

### I. THE PARTIES & BACKGROUND.

Plaintiff Michael Toth ("Michael") is the founder, President, Chief Executive Officer, and owner of 50% voting interest and 25% equity interest of [LSI,] a Pennsylvania educational training LLC operating in and servicing multiple states.  Linawati Toth ("Lina"), Michael's wife, is an LSI manager and employee.  Bryan Toth

---

[1] The appeals at 266 WDA 2022, 267 WDA 2022, and 403 WDA 2022 were consolidated *sua sponte* at Superior Court Journal No. J-A06019-23.  **See** Order, 6/28/22.  The related appeal at 846 WDA 2022 was assigned Superior Court Journal No. J-A06020-23, and it was consolidated with the appeals at 266 WDA 2022, 267 WDA 2022, and 403 WDA 2022, in an order filed on August 1, 2022.

("Bryan"), Michael's brother, owns 50% voting interest and 25% equity interest of LSI. Eugene Toth ("Eugene"), Michael's father, and Marie Toth ("Marie"), Michael's mother, are each 25% owners in equity interest of LSI.

After founding LSI in 2002, Michael gifted Marie, Eugene, and Bryan their respective interests. Around the Thanksgiving holiday in 2020, relations between the parties began to deteriorate. On January 8, 2021, Bryan, Eugene, and Marie met with Florida legal counsel and executed three legal agreements: a "Written Consent to Actions Taken Without a Meeting by the Members of Learning Sciences International, LLC" ("First Written Consent") an "Amended and Restated Operating Agreement of Learning Sciences International, LLC" ("2021 [Operating] Agreement"), and an additional "Written Consent to Actions Taken Without a Meeting by the Members of Learning Sciences, International, LLC" ("Second Written Consent").

The First Written Consent, signed only by [Appellants], acknowledged that LSI was a Pennsylvania LLC governed by a 2012 Operating Agreement ("2012 [Operating] Agreement") and allegedly allowed [Appellants] "ratify, approve, and adopt" the 2021 [Operating] Agreement in Michael's absence pursuant to Section 13.5 of the 2012 [Operating] Agreement, which provides that the 2012 [Operating] Agreement "may not be amended except by the written agreement of Members holding Two-Thirds Interest of the Company." By "adopting" the 2021 [Operating] Agreement in light of the First Written Consent, [Appellants] aimed to "approve LSI's change of its headquarters and subject laws to Florida."

The Second Written Consent, signed only by [Appellants], acknowledged Michael and Lina's then-current status as LSI "officers and/or management personnel," yet allegedly allowed [Appellants] to terminate Michael and Lina, having determined that "it was in the best interests of LSI to change some of its current officers and management personnel."

Despite executing the First Written Consent, the 2021 [Operating] Agreement, and the Second Written Consent under the guise of having met the Two-Thirds Interest requirement of Section 13.5 of the 2012 [Operating] Agreement, [Appellants] overlook Section 1.37 of the 2012 [Operating] Agreement which states "Two-thirds Interest shall mean one or more Voting Interests of Members

which taken together exceed 66.67% of the aggregate of all Voting Interests." Section 1.39 of the 2012 [Operating] Agreement further provides that Bryan and Michael each have 50% Voting Interest.

## II. PROCEDURAL HISTORY

On December 12, 2021, [Appellees] filed a Complaint seeking injunctive relief and damages against Marie, Eugene, Bryan, and LSI (collectively referred to herein as " Defendants") including the following counts: Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (Count I), Breach of Contract (2012 Operating Agreement) (Count II), Breach of Fiduciary Duty and Common Law Duty of Loyalty (Count III), Conversion, fraud and Defamation (Count IV, V, & VI), Declaratory Judgment (Count VII), and Constructive Trust and Accounting (Count VIII).

With respect to Count VII, [Appellees] sought judgment declaring that:

(a) The 2012 . . . Operating Agreement remains in full force and Effect, and that the purported Written Consents and 2021 Operating Agreement are null and void and therefore without lawful import, authority or legitimacy;

(b) Mr. Michael Toth remains the President, Chief Executive Officer and employee of LSI, with all of the right, title and privileges of those positions;

(c) Ms. Linawati Toth remains a manager and employee of LSI, with all of the right, title and privileges of these positions;

(d) Defendant LSI is Pennsylvania corporation and must remain so, and any action taken to changes that must be undone as without authorization or legal justification.

In response to [Appellees'] request for injunctive relief, on January 19, 2021, [the trial c]ourt granted [Appellees'] Emergency Motion for Temporary Restraining Order pending resolution of the preliminary injunction, which was scheduled for argument on February 5, 2021. On February 2, 2021, [the trial c]ourt entered an order staying all case activity pending the parties' engagement in alternative dispute resolution [(ADR)] — later deemed to be unsuccessful. While the case was stayed in

- 5 -

[the trial c]ourt, [Appellants] brought an additional lawsuit against [Appellees] in Florida state court.

On May 3, 2021, [Appellants'] Preliminary Objections were overruled and [the trial c]ourt ultimately appointed Mr. John McGinley, Jr. as the Interim Custodian Pendente Lite ("[Interim] Custodian") on August 4, 2021.[2]  More specifically, [the trial c]ourt tasked the [Interim] Custodian with the purpose of providing interim findings of fact and conclusions of law as to whether the Members were deadlocked in the management of LSI's affairs and whether it would be reasonably practicable for LSI's Members to carry on the business . . ., as well as other recommendations regarding LSI's management, direction, and ownership.  In accordance with the [c]ourt's August 4th order, the [Interim] Custodian filed Interim Finding of Fact and Conclusions of Law ("[Interim] Custodian's Report") on October 22, 2021. Amongst other things, the [Interim] Custodian found that, in light of [Appellants'] failed attempt to adopt the 2021 [Operating] Agreement without Michael's consent, the 2012 Operating Agreement continues to govern LSI and the rights of its Members.

After determining that the dispute as to LSI's governing document was a legal issue capable of resolution via summary judgment, [the trial c]ourt ordered the parties to file cross-motions for summary judgment.  On January 12, 2022, [Appellees] filed a Motion for Partial Summary Judgment and [Appellants] filed a Cross-Motion for Summary Judgment, both which are the focus of this appeal.  Following argument on the motions, [the trial c]ourt entered two orders — one denying [Appellants'] Cross-Motion for Summary Judgment [(the order at 267 WDA 2022)] and another granting [Appellees'] Motion for Partial Summary Judgment [(the order at 266 WDA 2022)].

Trial Ct. Op., 6/24/22, at 1-5 (some formatting altered and footnotes omitted).

Appellants filed timely and separate notices of appeal from the February 15, 2022 orders.  **See** Docket No. 266 WDA 2022 (appeal from the order granting partial summary judgment relief in the form of declaratory judgment

---

[2] On May 25, 2021, Appellees filed a motion to dissolve and wind-up LSI.

in favor of Appellees that the 2012 Operating Agreement controls); Docket No. 267 WDA 2022 (appeal from the order denying Appellants' motion for summary judgment).  Both the trial court and Appellants complied with Pa.R.A.P. 1925.

On March 11, 2022 and March 16, 2022, the trial court held hearings on Appellees' motion to dissolve and wind-up LSI.  The trial court subsequently entered an order stating:

> AND NOW, this 5th day of April, 2022, having considered [Appellees'] Amended Petition to Dissolve and Wind-Up Learning Sciences International, LLC, [Appellants'] response thereto, and following a hearing thereupon, the court makes the following factual findings and legal conclusions:
>
> A. Michael D. Toth ("Michael"), Bryan E. Toth ("Bryan"), Eugene W. Toth ("Eugene") and Marie Toth ("Marie") are each owners of 25% of the issued and outstanding units of Learning Sciences International, LLC ("LSI").
>
> B. Michael and Bryan each control 50% of the voting rights of LSI.
>
> C. Michael, Bryan, Eugene and Marie are collectively referred to as the "Members."  LSI and the Members are parties to [the 2012 Operating Agreement].
>
> D. The Members are and have been engaged in a series of disputes concerning the management, operation and future direction of LSI, which disputes are the subject of litigation with this court in the above captioned case.
>
> E. The Members have been unable to resolve their differences despite efforts to do so at the request of the court through multiple formal mediations and informal settlement discussions.
>
> F. The court has determined that the disputes, divisiveness and litigation among the Members of LSI that currently exist are and will continue to have a lasting and

significant adverse consequence upon the viability of LSI to operate as an ongoing concern.

G.  LSI is not currently profitable in the current year but for one-time Government assistance, and was barely above break-even for 2020.

H.  The court has determined that the Members are irrevocably deadlocked in the management of [LSI's] affairs, and that it is not otherwise reasonably practicable to carry on the business in conformity with LSI's Certificate of Incorporation and Operating Agreement.

I.  The Court has determined that [LSI] should begin a process of dissolution under Pennsylvania law applicable to LSI, including, without limitation, the provisions of 15 Pa.C.S. § 8872.

J.  The court, having found good cause, hereby exercises its discretion to appoint a liquidating trustee for LSI pursuant to 15 Pa.C.S. § 8872(e) to accomplish such dissolution.

K.  The court hereby appoints James Chiafullo, Esq., of Dentons, Cohen & Grisby (the "Liquidating Trustee") to serve as Liquidating Trustee of LSI, with all power, authority, protection and duty of a Liquidating Trustee appointed under . . . 15 Pa.C.S. § 8872(e) for the purpose, *inter alia*, of consummating such dissolution, and to carry out such dissolution with all possible deliberation and speed.

Order, 4/5/22, at 1-2.  Appellant filed a timely appeal from the trial court's order, which was docketed at 403 WDA 2022.  Thereafter, Appellants moved for a stay pending appeal, and this Court granted the motion for stay on June 16, 2022.

Thereafter, the trial court explained:

During the pendency of the appeal, Michael Toth initially continued to manage the company as CEO.  However, the uncertainty surrounding this litigation and the future existence of LSI have

created roadblocks to maintaining business as usual. Employees, some of whom are key personnel, have been leaving LSI and it has become understandably difficult to recruit and retain new employees. Due to LSI's primary clients being school districts, its contracts typically begin in August and last for the entire school year. The uncertainty and low retention of employees has made it impossible to anticipate whether LSI is able to enter into and perform new contracts for the school year or whether such contracts would create greater liability for the company. As such, LSI formed no new contracts and currently has no new income. The litigation and deadlock has gone so far as to cause hesitancy among LSI's existing clients about its ability to perform. Also contributing to this *de facto* slowing down and winding up of LSI is Michael's stepping down as CEO. Despite the stay of [the trial c]ourt's dissolution order, Michael has allegedly taken steps to form a new company in anticipation of LSI's eventual dissolution, such as creating a website and hiring former LSI employees.

As a result of these developments, on June 28, 2022[, Appellees] sought temporary relief from the Superior Court's stay order so as to petition [the trial c]ourt to appoint a receiver to manage the company's remaining affairs and pay its debts as they come due pending the resolution of [Appellants'] appeal. By order dated June 29, 2022, the Superior Court granted the relief and temporarily lifted the stay order for the limited purpose of having [the trial c]ourt rule on [Appellees'] petition to appoint a receiver. On July 15, 2022[, the trial c]ourt heard argument on the petition to appoint the receiver. Despite the numerous allegations of Michael's apparent conflict of interest in running LSI and winding up its affairs, [Appellants] astonishingly opposed the appointment of an impartial receiver to run the company. By order dated July 21, 2022, [the trial c]ourt granted the petition and appointed a receiver.

Trial Ct. Op., 9/2/22, at 1-2. Appellants subsequently filed a timely appeal from the July 21, 2022 order appointing the custodian which was docketed at 846 WDA 2022.

In sum, the instant matter involves four separate docket numbers: 266 WDA 2022, 267 WDA 2022, 403 WDA 2022, and 846 WDA 2022. Appellants and the trial court have complied with Pa.R.A.P. 1925 in all four matters.

In these consolidated and related appeals, Appellants raise the following issues:

1. [Appeals at 266 WDA 2022 and 267 WDA 2022:] Whether the trial court committed reversible error by granting, on a motion for summary judgment, a declaratory judgment in [Appellees'] favor insofar as: (1) as a matter of law, [Appellants] were entitled to judgment in their favor on [Appellees'] declaratory judgment claim; and (ii) alternatively, at a minimum, genuine issues of material fact remained as to [Appellees'] declaratory judgment claim and [Appellants'] defenses thereto?

2. [Appeal at 403 WDA 2022:] Whether the trial court committed reversible error by ordering the dissolution of LSI, insofar as: (i) the decision was inextricably linked to the trial court's erroneous declaratory judgment; and (ii) alternatively, even if the declaratory judgment was proper, myriad other independent factual and legal deficiencies precluded the trial court's order as a matter of law?

3. [Appeal at 846 WDA 2022:] Whether the trial court committed reversible error by appointing James Chiafullo as custodian of LSI insofar as: (i) the decision was directly at odds with this Court's Orders staying the Plan of Dissolution ordered previously by the trial court; and (ii) independent of this Court's Stay Order, the factual and legal predicates for said appointment were unsatisfied as a matter of law?

Appellants' Brief at 6-7.

### **Appealability of Orders - 266 WDA 2022 & 267 WDA 2022**

As an initial matter, we first address whether the appeals at 266 WDA 2022 and 267 WDA 2022 are properly before this Court. It is well settled that

the appealability of an order directly implicates the jurisdiction of the court asked to review the order. **Knopick v. Boyle**, 189 A.3d 432, 436 (Pa. Super. 2018) (internal citation omitted). As a general rule, appellate courts have jurisdiction only over appeals taken from a final order. **In re Bridgeport Fire Litigation**, 51 A.3d 224, 229 (Pa. Super. 2012). A final order is one that disposes of all the parties and all the claims; or is entered as a final order pursuant to the trial court's determination under Rule 341(c). Pa.R.A.P. 341(b)(1), (3). An appeal may also be taken from an order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties. Pa.R.A.P. 311(a)(8).

**Schmitt v. State Farm Mutual Auto. Ins. Co.**, 245 A.3d 678, 681 (Pa. Super. 2021) (quotation marks omitted).

Additionally, 42 Pa.C.S. § 7532 provides:

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree.

42 Pa.C.S. § 7532.

"Although the [Declaratory Judgments] Act provides that the declaration shall have the 'force and effect of a final judgment or decree,' . . . . It is the nature of the order at issue that dictates whether it is final and appealable." **Schmitt**, 245 A.3d at 682 (citation omitted). This Court has summarized the case law regarding declaratory judgment actions that do not dispose of all claims and all parties as follows:

In **Bolmgren v. State Farm Fire and Cas. Co.**, 758 A.2d 689 (Pa. Super. 2000), the appellee brought an action against State Farm for a declaration of coverage under a homeowner's policy

- 11 -

and for damages. Specifically, Counts I-III of the appellee's amended complaint sought relief in the form of declaratory judgment, and Count IV sought damages, attorney's fees, interest and costs. Following competing motions for summary judgment, the court granted summary judgment in favor of the appellee on Counts I-III. State Farm appealed. As a prefatory matter, this Court considered whether the appeal was properly before us, where the damages claim in Count IV of the amended complaint remained outstanding.

In addressing whether the appeal was proper under Rule 311(a)(8) by way of the Declaratory Judgments Act, this Court explained:

Although the Act provides that the declaration shall have the "force and effect of a final judgment or decree," this partial adjudication does not become appealable merely because it is cast in the form of a declaratory judgment. Appellee's complaint in this matter, although captioned a declaratory judgment, sought ordinary civil relief and remedies in the form of a declaration of coverage and damages.[FN1] Her request for further relief, in the form of damages, has yet to be determined. Because an appeal will not lie from an interlocutory order, the present appeal must be quashed.

[FN1] It is the nature of the order at issue that dictates whether it is final and appealable. In this case, the order is not final since it does not dispose of the claim of damages raised in the complaint, in addition to the request for declaratory judgment. This case is different than that in **Redevelopment Authority of Cambria County v. International Insurance Co.**, [685 A.2d 581 (Pa. Super. 1996), *appeal denied*, 695 A.2d 787 (Pa. 1997)]. In that case the complaint sought relief in the form of declaratory judgment that Erie [Insurance Group] and International [Insurance Co.] owed a duty to defend and to indemnify the Authority in an action filed by a third party. In that case, the order was final because the trial court's determination that Erie [Insurance Group] had a duty to defend the third-party claim effectively ended the litigation. Here, in addition to the declaration of rights, the trial [c]ourt was asked to award damages under the policy. Under these circumstances, the

- 12 -

> [trial] court is required to address this request. Without doing so, the order is not final.

*Id.* at 691. . . .

This Court has repeatedly applied **Bolmgren** when discussing the appealability of orders that resolve declaratory judgment claims but leave other claims outstanding. **See, e.g., Bombar v. West American Ins. Co.**, 932 A.2d 78, 85-86 (Pa. Super. 2007) (holding that trial court's initial January 19, 2005 order granting summary judgment on declaratory judgment count of complaint was not final and appealable, where that order did not determine amount of damages for remaining bad faith claim; appeal from later December 30, 2005 order resolving outstanding bad faith claim was proper); **Cresswell v. Pennsylvania Nat. Mut. Cas. Ins. Co.**, 820 A.2d 172, 176 n.2 (Pa. Super. 2003) (determining trial court's initial December 20, 2001 order granting partial summary judgment in favor of appellee on declaratory judgment claim was interlocutory and unappealable, where court's order left unresolved additional bad faith claim; trial court's later order of May 28, 2002, which disposed of sole remaining bad faith claim, was final and appealable); **Moore Motors, Inc. v. Beaudry**, 775 A.2d 869, 870 (Pa. Super. 2001) (*per curiam*) (quashing appeal from order granting appellees' motion for partial summary judgment as interlocutory and unappealable; although court granted summary judgment in favor of appellees on all nine counts of appellants' amended complaints, and on count I of appellees' counterclaim seeking declaratory judgment, court's order left unresolved counts II and III of appellees' counterclaim; holding "absent an express determination of finality under Rule 341(c), the dismissal of a complaint with the concomitant dismissal of only one count of a multi-count counterclaim is interlocutory and unappealable. . . . To hold otherwise would permit the kind of piecemeal litigation that the Supreme Court specifically tried to eliminate when it enacted Rule 341").

Simultaneous to this Court's continued application of **Bolmgren**, our Supreme Court has issued a line of cases also dealing with the appealability of orders resolving declaratory judgment claims, beginning with **Nationwide Mut. Ins. Co. v. Wickett**, 763 A.2d 813 (Pa. 2000). In **Wickett**, our Supreme Court explained that under Section 7532, "an order in a declaratory judgment action that either affirmatively or negatively declares the rights and duties of the parties constitutes a final order." **Id.**, 763 A.2d at 818. Consequently, the Court held that an order sustaining the

- 13 -

preliminary objections in the nature of a demurrer of some defendants in a declaratory judgment action, and dismissing those defendants from the case, was a final, appealable order, even though claims against other defendants remained outstanding.

In **Pennsylvania Bankers Ass'n v. Pennsylvania Dep't of Banking**, 948 A.2d 790 (Pa. 2008), the Court limited the breadth of **Wickett**. In that case, certain banks filed a complaint against the Pennsylvania Department of Banking asserting different theories for declaratory relief, including several constitutional claims. The Commonwealth Court, which had original jurisdiction in the case, sustained the Department of Banking's preliminary objections in the nature of a demurrer regarding some of the banks' claims. Our Supreme Court quashed the appeal as interlocutory, distinguishing **Wickett** as follows:

> The Banks . . . argue that the Commonwealth Court's order constitutes a final, appealable order pursuant to **Wickett**. We find **Wickett** distinguishable, however, for the following reasons. In **Wickett**, the trial court's order put certain defendants out of court by dismissing all of the plaintiff's claims against them. In so doing, the order prevented the plaintiffs from obtaining any relief against these parties. It would therefore be appropriate in this context to characterize the trial court's order as a final order under 42 Pa.C.S. § 7532 because it, in essence, declared that the plaintiffs did not have any viable theory of recovery against such defendants.

> In contrast . . . , the Commonwealth Court's order in this case did not dismiss any party, but merely narrowed the scope of the Banks' declaratory judgment action, which raised alternative theories of relief. Because the Banks might still obtain the relief they are seeking based on one of the remaining constitutional theories, the Commonwealth Court's order sustaining the [Department of Banking's] preliminary objections has no certain effect upon the ultimate relief to which the Banks may be entitled. Thus, we find that the Commonwealth Court's order in this case did not declare the parties' rights within the meaning of 42 Pa.C.S. § 7532, and therefore, it is not a final order under **Wickett**.[FN16]

> [FN16] Notably, the intermediate appellate courts have limited **Wickett** to contexts where at least one party

- 14 -

has been dismissed from the case. ***See Wimer v. Pa. Employees Benefit Trust Fund***, 868 A.2d 8, 13 (Pa. Super. 2005), *aff'd*, 939 A.2d 843 (Pa. 2007) (finding ***Wickett*** applies when a complaint is dismissed and the plaintiffs are put out of courts); ***Consolidation Coal Co. v. White***, 875 A.2d 318, 325 (Pa. Super. 2005) (holding an order is only final under ***Wickett*** when there is "no conceivable legal theory under which Appellants could prevail"); ***Creswell***, [820 A.2d at 176 n.2] (granting partial summary judgment was not a final order under ***Wickett*** because one claim remained); ***Independ. Oil & Gas Ass'n of Pa. v. Pa. Pub. Util. Comm'n***, 804 A.2d 693, 701 (Pa. Cmwlth. 2002) (determining that ***Wickett*** does not apply unless the plaintiffs are put out of court).

\*   \*   \*

For the reasons outlined above, we conclude that the Commonwealth Court's order in this case, which sustained the [Department of Banking's] preliminary objections in the nature of a demurrer with respect to some, but not all, of the Banks' constitutional claims, is not a final, appealable order. Our conclusion today is not only informed by our well-established policy of avoiding piecemeal litigation, it also recognizes that such an order does not represent an affirmative or negative declaration of the parties' rights within the meaning of 42 Pa.C.S. § 7532 because alternate avenues of relief can still be pursued against the same parties in the courts below.

Accordingly, we quash the instant appeal as interlocutory.

***Pennsylvania Bankers Ass'n***, 948 A.2d at 799-800 (some internal footnotes omitted). ***See also United States Organizations for Bankruptcy Alternatives, Inv. v. Department of Banking ("USOBA")***, 26 A.3d 474 (Pa. 2011) (quashing appeal from Commonwealth Court's order striking two provisions of Debt Management Services Act ("Act 117") as unconstitutional; Commonwealth Court did not address several of USOBA's arguments and did not ultimately decide whether USOBA was entitled to full relief originally requested, which remains available via USOBA's alternate arguments; essentially, Commonwealth Court simply narrowed scope of USOBA's declaratory judgment action, without ultimately deciding case;

Department of Banking appealed order which, in light of USOBA's original challenge to Act 117, granted USOBA only partial declaration of parties' rights, status, or legal relations).

Most recently in the **Wickett** line of cases, our Supreme Court summarized these holdings in **Pennsylvania Manufacturers' Assoc. Ins. Co. v. Johnson Matthey, Inc.**, 188 A.3d 396 (Pa. 2018), stating:

> This Court last expounded upon the appealability of an order declaring the rights of parties in [**USOBA**]. In that decision, the Court provided a rather straightforward two-part test for appellate courts to apply when considering whether an order declaring the rights of parties is final and appealable: (1) what is the effect of the lower court's decision on the scope of the litigation; and (2) what practical effect does the court's decision have on the ultimate outcome of the case. . . . If the order in question merely narrows the scope of the litigation and does not resolve the entirety of the parties' eligibility for declaratory relief, then the order is interlocutory and not immediately appealable.

**Pennsylvania Manufacturers'**, 188 A.3d at 399-400 (quashing appeal as interlocutory where Commonwealth Court entered order that effectively denied appellant's claim for declaratory relief but left unresolved appellee's related but broader counterclaim for declaratory relief; as order on appeal does not resolve parties' competing claims for declaratory relief but merely narrowed dispute, order is not appealable at this time). **See also Titeflex Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA**, 88 A.3d 970 (Pa. Super. 2014) (holding order declaring that appellant-insurer had duty to defend appellee-corporation in underlying actions was appealable because order resolved declaratory judgment action for all practical purposes; only conclusion left for trial court to reach was amount of indemnification, which could not be made until underlying actions were completed; once trial court determined that insurer had duty to defend, underlying actions could continue; thus, this case is analogous to **Redevelopment Authority**, and not subject to limitation on **Wickett** announced in **Pennsylvania Bankers Ass'n**).

**Schmitt**, 245 A.3d at 682-85 (some formatting altered).

- 16 -

In sum, applying the two-part test from **_Pennsylvania Manufacturers'_** requires this Court to determine (1) the effect of the trial court's decision on the scope of the litigation; and (2) the practical effect the trial court's decision has on the outcome of the case. **_Pennsylvania Manufacturers'_**, 188 A.3d at 400. As noted, if an order "merely narrows the scope of the litigation and does not resolve the entirety of the parties' eligibility for declaratory relief, then the order is interlocutory and not immediately appealable." **_Id._** (citation omitted).

In the instant case, Appellants appealed from the trial court's February 15, 2022 orders granting declaratory judgment in favor of Appellees at 266 WDA 2022 and denying Appellants' cross-motion for summary judgment at 267 WDA 2022. In its June 24, 2022 opinion, the trial court concluded that neither order was appealable. **_See_** Trial Ct. Op., 6/24/22, at 9.

While the instant appeals were pending, this Court issued a rule directing Appellants to show cause why the appeals at 266 WDA 2022 and 267 WDA 2022 should not be quashed as interlocutory. **_See_** Order, 3/23/22. Appellants filed a response asserting that the February 15, 2022 orders are appealable pursuant to Rule 311(a)(8), and asserting that **_Schmitt_** is distinguishable. Resp. to Rule, 4/1/22, at 1-2. On June 28, 2022, this Court discharged the rule to show cause and informed the parties that the issue would be decided by the merits panel. Order, 6/28/22.

As noted previously, with respect to the appeal at 266 WDA 2022, Appellees sought partial summary judgment in the form of declaratory relief

- 17 -

concerning which operating agreement was LSI's governing document and whether Michael Toth would continue to remain president and CEO of LSI. *See* Trial Ct. Op., 6/24/22, at 4; Appellees' Mot. for Partial Sum. Jud., 1/12/22, at 3, 14.

> In granting Appellees' motion, the trial court issued an order stating:
>
> AND NOW, to wit, this 15th day of February, 2022, upon due consideration of [Appellees'] Motion for Partial Summary Judgment, all filings relevant thereto, and after hearing oral argument on the same, it is hereby ORDERED, ADJUDGED, and DECREED that said motion is GRANTED. Accordingly, the Court enters a declaratory judgment as follows:
>
> (1) The 2012 [Operating Agreement for LSI] remains in full force and effect; and
>
> (2) The purported 2021 [Operating Agreement for LSI] was, from its inception, null and void, without lawful import, authority, or legitimacy.

Order on Appeal at 266 WDA 2022, 2/15/22.

Following our review, we conclude that the trial court's order at 266 WDA 2022 meets the two-part test for an appealable order. *See Pennsylvania Manufacturers*,' 188 A.3d at 400. We recognize that the trial court's order did not address whether Michael Toth should continue as LSI's president. However, because the trial court found that the 2012 Operating Agreement was controlling, the order effectively resolved Appellees' declaratory judgment claims for all practical purposes. Therefore, the trial court's interlocutory order was appealable as of right. *See id.*; *see also Titeflex Corp.*, 88 A.3d at 976; Pa.R.A.P. 311(a)(8); 42 Pa.C.S. § 7532.

- 18 -

Accordingly, we are constrained to disagree with the trial court's conclusion that the appeal at 266 WDA 2022 should be quashed.

With respect to the order on appeal at 267 WDA 2022, Appellants filed a cross-motion for summary judgment requesting that the trial court dismiss Appellees' petition to dissolve and wind-up LSI and asking the court to make a determination that the 2021 Operating Agreement should control. *See* Appellants' Cross-Mot. for Sum. Jud., 1/12/22 at 12-44, 45. Unlike Appellees, Appellants did not request summary judgment in the form of declaratory relief. In denying Appellants' motion, the trial court issued an order stating:

> AND NOW, to wit, this 15th day of February, 2022, upon due consideration of [Appellants'] Cross-Motion for Summary Judgment, all filings relevant thereto, and after hearing oral argument on the same, it is hereby ORDERED, ADJUDGED, and DECREED that said motion is DENIED.

Order on Appeal at 267 WDA 2022, 2/15/22.

We recognize that the trial court's order at 267 WDA 2022 did not explicitly resolve Appellants' dispute concerning Appellees' motion to involuntarily dissolve LSI and that Appellants did not seek declaratory relief. However, because the trial court denied Appellants' motion in its entirety, the order had the practical effect of denying declaratory relief concerning the 2021 Operating Agreement and the dissolution of LSI, *see, e.g., Coticchia v. Malcovery Security, LLC*, 143 WDA 2021, 2021 WL 5827318, at *4 (Pa.

Super. 2021),[3] both of which were critical issues at the center of this litigation and the outcome of this case. *See Schmitt*, 245 A.3d at 683; *Pennsylvania Manufacturers'*, 188 A.3d at 400; *Titeflex Corp.*, 88 A.3d at 976. Therefore, we conclude that the trial court's order had the effect of doing more than narrowing the scope of the litigation. *See Schmitt*, 245 A.3d at 683; *Pennsylvania Manufacturers'*, 188 A.3d at 400; *Titeflex Corp.*, 88 A.3d at 976.

For these reasons, we conclude that the order denying Appellants' cross-motion for summary judgment at 267 WDA 2022 is an interlocutory appealable order as of right pursuant to Pa.R.A.P. 311(a)(8).[4] Accordingly, we are constrained to disagree with the trial court's conclusion that the appeal at 267 WDA 2022 should be quashed. *See Pennsylvania Manufacturers'*, 188 A.3d at 400; *see also Titeflex Corp.*, 88 A.3d at 976; Pa.R.A.P. 311(a)(8); 42 Pa.C.S. § 7532.

In sum, because we conclude that the appeals at both 266 WDA 2022 and 267 WDA 2022 are properly before this Court, we will address the merits of Appellants' claims.

_____

[3] *See* Pa.R.A.P. 126(b) (non-precedential Superior Court decisions filed after May 1, 2019, may be cited for their persuasive value).

[4] We note that the order on appeal at 403 WDA 2022, which orders the dissolution of LSI, and the order on appeal at 846 WDA 2022, which appoints a custodian, both affect the possession or control of property, therefore these orders are interlocutory appeals as of right. *See* Pa.R.A.P. 311(a)(2).

**Appeal at 266 WDA 2022**

On the merits, Appellants contend that the trial court erred in concluding that the 2012 Operating Agreement controlled and that the 2021 Operating Agreement was a nullity. Specifically, Appellants argue that the 2012 Operating Agreement's provision regarding voting rights permitted Appellants to amend LSI's governing documents, and therefore the 2021 Operating Agreement is valid. Appellants' Brief at 31-37. Alternatively, Appellants claim that the language concerning voting rights in the 2012 Operating Agreement is ambiguous and subject to different but reasonable interpretations, and therefore presents a genuine issue of fact, accordingly summary judgment was entered in error. *See id.* at 38-39.

When reviewing a trial court's decision granting or denying a motion for summary judgment, we adhere to the following standard and scope of review:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Siciliano v. Mueller*, 149 A.3d 863, 864 (Pa. Super. 2016); *see also Jones v. Unitrin Auto and Home Insurance Co.*, 40 A.3d 125, 127 (Pa. Super. 2012) (noting that "ordinary summary judgment procedures are applicable to declaratory judgment actions").

This Court has explained that where an agreement contains definitions for the words contained therein, the court will apply those definitions in interpreting the agreement. **See Monti v. Rockwood Ins. Co.**, 450 A.2d 24, 25 (Pa. Super. 1982). Moreover,

> [i]f the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties. If, however, the contractual terms are ambiguous, then resort to extrinsic evidence to ascertain their meaning is proper. A contract's terms are considered ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

**Commonwealth ex rel. Kane v. UPMC**, 129 A.3d 441, 463 (Pa. 2015) (formatting altered and citations omitted). Further,

> our review is guided by certain principles, or canons, of contract interpretation. . . . First, the entire contract should be read as a whole . . . to give effect to its true purpose. Second, a contract must be interpreted to give effect to all of its provisions. Thus, our Court will not interpret one provision of a contract in a manner which results in another portion being annulled. Third, a word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons, such as thwarting the intent of the agreement. And, finally, a party's performance under the terms of a contract is evidence of the meaning of those terms.

**Id.** at 463-64 (formatting altered and citations omitted).

Finally, when reviewing an LLC's operating agreement, we note that "[a]n operating agreement may specify that its amendment requires the approval of a person that is not a party to the agreement or the satisfaction of a condition. An amendment is ineffective if its adoption does not include

the required approval or satisfy the specified condition." 15 Pa.C.S. § 8817(a)

(citations omitted).

Instantly, in Appellants' appeal at 266 WDA 2022, they argue that the

language from the 2012 Operating Agreement permitted Appellants to amend

the agreement and create the 2021 Operating Agreement. Appellants assert

that "Section 13.5 of the 2012 Operating Agreement provided that the

agreement 'may not be amended except by the written agreement of Members

holding Two-Thirds Interest of the Company.'" Appellants' Brief at 32 (quoting

2012 Operating Agreement at Section 13.5). Appellants claim that the 2012

Operating Agreement establishes the following:

> • Section 1.22: Membership Interest means "A Member[']s entire interest in the Company, including such Member's Economic Interest and such other rights and privileges that the Member may enjoy . . . ."
>
> • Section 1.24: Ownership Interest means: "in the case of a Member, the Member's Membership Interest . . . ."
>
> • Section 1.39: Voting Interests are held by Michael Toth and Bryan Toth, each said interest carrying 50% weight, *i.e.*, each individual holds an equal Voting Interest.
>
> • Section 1.37: Two-Thirds Interest means: "one or more Voting Interests of Members which taken together exceed 66.67% of the aggregate of all Voting Interests."
>
> • Section 1.20: Majority Interest means "one or more Voting Interests of Members which taken together exceed fifty percent (50%) of the aggregate of all Voting Interests."

Appellants' Brief at 32 (formatting altered and citations omitted).

Appellants claim that this language supports the conclusion that

Appellants were members holding a combined interest in 75% of LSI, and

therefore, Appellants' total votes constituted more than 66.67% allowing Appellants to vote to amend the 2012 Operating Agreement. Appellants' Brief at 32-35. Appellants assert that "it was absolutely the parties' intent that a decision as fundamental as amending the [2012 O]perating [A]greement would be reserved for all of the company's owners." Appellants' Brief at 34 (emphasis omitted).

Appellants allege that the language from Section 13.5, which sets forth the requirements to amend the 2012 Operating Agreement, states that the agreement "may not be amended except by the written agreement of Members holding Two-Thirds Interest of the Company." *Id.* at 37-38. Appellants assert that the inclusion of the words "of the company" modifies and expands the definition of "Two-Thirds Interest" from Sections 1.37 and 1.39, and it allows for the conclusion that "Voting Interest" includes Eugene and Marie, in addition to Bryan and Michael. *Id.* at 33-38; Appellants' Reply Brief at 5-6.

In resolving Appellants' claims, the trial court concluded that (1) Appellants did not satisfy the voting requirements necessary to amend the 2012 Operating Agreement; and (2) the terms of the 2012 Operating Agreement were unambiguous. *See* Trial Ct. Op., 6/24/22, at 11-12.

As noted previously, Section 13.5 of the 2012 Operating Agreement states: "This Agreement may not be amended except by the written agreement of Members holding Two-Thirds Interest of the Company." 2012 Operating Agreement at Section 13.5. The 2012 Operating Agreement defines

a "Two-Thirds Interest" as follows: "Two-thirds Interest shall mean one or more Voting Interests of Members which taken together exceed 66.67% of the aggregate of all Voting Interests." *Id.* at Section 1.37. The 2012 Operating Agreement specifically and exclusively limited "Voting Interest" to Bryan and Michael. *See id.* at 1.39. Indeed, Michael has 50% Voting Interest, and Bryan has 50% Voting Interest. *See id.* Further, Section 1.39 expressly states that Eugene and Marie have "0%" Voting Interest. *Id.* at Section 1.39.

Accordingly, Appellants' voting rights claims are belied by the record and are meritless. Although the 2012 Operating Agreement provides that Bryan, Eugene, and Marie each have a 25% sharing ratio pursuant to Section 1.33, the 2012 Operating Agreement does not provide Eugene nor Marie with voting interests. The 2012 Operating Agreement unambiguously and expressly states that only Bryan and Michael have voting interests to amend the 2012 Operating Agreement. *See id.* at Sections 1.20, 1.37, 1.39, and 13.5. Contrary to Appellants' assertions, there is no support in the record for their claim that Bryan, Eugene, and Marie's aggregate 75% economic interest and sharing ratio pursuant to Sections 1.14, 1.15, 1.16, 1.17[5] and 1.33, could

---

[5] Pursuant to Sections 1.14, 1.15, 1.16, and 1.17, Eugene and Marie have limited interests in LSI, and they are Equity Owners with an Economic Interest. *See* 2012 Operating Agreement at Sections 1.14, 1.15, and 1.17. The Agreement specifies that Equity Owners and Economic Interest Owners are not "Members" such as Bryan and Michael, and expressly lack "the right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Members or Officers." 2012 Operating Agreement at Section 1.14; *see also id.* at Sections 1.15, 1.17, and 1.33.

be combined to satisfy the "Two-Thirds Interest" required to amend the 2012 Operating Agreement. On this record it is clear that the 2012 Operating Agreement does not provide voting interests to Eugene and Marie such that they cannot parlay their economic interests into voting interests. *See id.* at Section 1.39. In sum, we agree with the trial court that Appellants have not satisfied the voting requirements necessary to amend the 2012 Operating Agreement. *See* Trial Ct. Op., 6/24/22, at 11-12.

Further, we agree with the trial court that the terms of the 2012 Operating Agreement are unambiguous. The trial court explained as follows:

> [Appellants] also go on to assert that, in the alternative, [the trial c]ourt erred in entering a declaratory judgment in [Appellees'] favor on a motion for summary [judgment and alleged] the existence of ambiguous language in Section 13.5 of the [2012 Operating Agreement] and the existence of a genuine issue of material fact concerning what the parties' intended under [Section] 13.5 of the 2012 [Operating] Agreement.
>
> When construing agreements involving clear and unambiguous terms, courts need only examine the writing itself to give effect to the parties' understanding. *Stephan v. Waldron Elec. Heating & Cooling LLC*, 100 A.3d 660, 665 (Pa. Super. 2014) ("This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.")[.] As discussed above, [Section] 13.5 of the 2012 [Operating] Agreement was not ambiguous. In examining [Section] 13.5 of the Agreement, requiring "Two-Thirds Interest" for a valid amendment with [Section] 1.37, defining Two-Thirds Interest to be the excess of 66.67% of all Voting Interest, defined as the interests belonging only to Michael and Bryan in equal share in [Section] 1.[3]9, the parties' understanding is clear under the 2012 [Operating] Agreement's plain meaning as written. *See Stephan*, 100 A.3d at 665. Thus, given the absence of any genuine issue of material fact, [the trial c]ourt properly entered a declaratory judgment on [Appellees'] . . . Motion for Partial Summary Judgment.

Trial Ct. Op., 6/24/22, at 12 (some formatting altered and footnote omitted).

On this record, we agree with the trial court and conclude that there is no ambiguity in the language of the 2012 Operating Agreement. The trial court concluded that "Voting Interest" was defined in the 2012 Operating Agreement and unambiguously reflected that the only voting interests were held by Bryan and Michael, each holding a 50% interest. As such, the 2012 Operating Agreement unambiguously precluded the 2021 Operating Agreement, and the trial court correctly concluded that the 2012 Operating Agreement is LSI's governing document.

For these reasons, Appellants lacked sufficient voting interests to amend the 2012 Operating Agreement. Because Appellants lacked the votes to amend the 2012 Operating Agreement, we agree with the trial court that the 2021 Operating Agreement is a legal nullity. Accordingly, we discern no error in the trial court entering partial summary judgment on this issue in favor of Appellees, finding that the 2021 Operating Agreement was a nullity, and concluding that the 2012 Operating Agreement remained in force. On this record, we affirm the order on appeal at 266 WDA 2022 and no relief is due.

## Appeal at 267 WDA 2022

Appellants next argue that the trial court erred in denying their cross-motion for summary judgment and concluding that the 2012 Operating Agreement controlled and that the 2021 Operating Agreement was a nullity. Appellants' Brief at 31-39.

In addressing Appellants' claim, the trial court explained:

> Although [Appellants] argue that this court erred by failing to grant . . . summary judgment in [Appellants'] favor, asserting that this court was required to determine, as a matter of law, that the 2021 Agreement was lawfully adopted, displaced the 2012 Agreement, and now governs LSI's affairs — this court disagrees.

> \* \* \*

> With respect to the 2012 Agreement, Article 13.5 provides in pertinent part that the agreement may not be amended except by the written agreement of Members holding two-thirds interest of the Company. Two-thirds interest is defined as one or more voting interests of Members which taken together exceed 66.67% of the aggregate of all voting interests. Voting interest is further defined as those interests belonging only to Michael and [Appellant] Bryan Toth in equal share (50% each) under Art. 1.19. Although Article 1.19 makes clear that Eugene and Marie have 0% voting interest, [Appellants'] assertion that their collective 75% economic interest as members meets the requirements of Article 13.5 to allow for amendment in the absence of Michael flies in the face of the only reasonable interpretation of the 2012 Agreement. Seeing that there was certainly evidence to allow a factfinder to render a verdict in favor of [Appellees], this court did not err by [denying Appellants' motion for summary judgment].

**See id.** at 10-11 (formatting altered and internal citations and footnotes omitted).

Following our review, we agree with the trial court that "Voting Interest" was defined in the 2012 Operating Agreement and unambiguously reflected that the only voting interests were held by Bryan and Michael, each holding a 50% interest. **See id.** at 10-12. The 2012 Operating Agreement unambiguously precluded the 2021 Operating Agreement, and the trial court correctly concluded that the 2012 Operating Agreement is LSI's governing document. **See Kane**, 129 A.3d at 463. Therefore, Appellants lacked sufficient voting interests to amend the 2012 Operating Agreement, and the

2012 Operating Agreement remains in control. On this record, we discern no error in the trial court's order denying Appellants' motion for summary judgment, and we affirm the order on appeal at 267 WDA 2022.

**Appeal at 403 WDA 2022**

In the appeal at 403 WDA 2022, Appellants contend that the trial court erred in entering the April 5, 2022 order. Appellants first argue that dissolution was foreclosed by the terms of the 2021 Operating Agreement. Appellants' Brief at 39. Appellants also assert that dissolution was not raised properly in the trial court. *Id.* at 40. Further, Appellants contend that, assuming the 2012 Operating Agreement remains in force, the trial court erred in dissolving LSI because Section 7.11 of the 2012 Operating Agreement mandated binding mediation.[6] *Id.* at 41-46.

We reiterate here that we agree with the trial court that the 2012 Operating Agreement remains in effect, and that the 2021 Operating Agreement is a nullity. Therefore, Appellants' argument that the dissolution of LSI was foreclosed by the terms of the 2021 Operating Agreement is meritless and no relief is due.

---

[6] Binding mediation is a form of ADR. *See Armstrong World Indus., Inc. v. Travelers Indem. Co.*, 115 A.3d 342, 346 (Pa. Super. 2015) (stating that ADR is defined as "[a] procedure for settling a dispute by means other than litigation, such as arbitration or mediation." (quoting BLACK'S LAW DICTIONARY (9th ed. 2009))). Moreover, ADR is a matter of contract. *See, e.g., Humphrey v. GlaxoSmithKline PLC*, 263 A.3d 8, 14 (Pa. Super. 2021).

Next, Appellants assert that the issue of LSI's dissolution was not properly raised before the trial court. Appellants' Brief at 40. Appellants argue that dissolution must be specifically pleaded as a cause of action in a complaint or in a counterclaim. *See id.* Appellants contend that the issue of dissolution was not before the trial court until Appellees raised it in a motion for dissolution on May 25, 2021. *See id.* at 41.

It is well settled that Pennsylvania is a fact pleading jurisdiction. *See* *Griffin v. Rent-A-Center, Inc.*, 843 A.2d 393, 395 (Pa. Super. 2004) (*per curiam*). Indeed, this Court has explained:

> Pennsylvania is a fact pleading rather than a notice pleading jurisdiction. As a result, courts are presumed to know the law and plaintiffs need only plead facts constituting the cause of action and the courts will take judicial notice of the statute involved. The plaintiff is not required to specify the legal theory . . . underlying the complaint.

*Griffin*, 843 A.2d at 395 (formatting altered and citations omitted).

With respect to dissolution of an LLC, 15 Pa.C.S. § 8871 provides that an LLC may be dissolved and its activities and affairs wound up when "it is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement[.]" 15 Pa.C.S. § 8871(a)(4)(ii).

Instantly, the trial court correctly observed that Pennsylvania is a fact pleading state and that "[a]s such, causes of action and legal theories need not specifically be alleged in a complaint, as long as the legally operative facts

- 30 -

underlying those causes of action have been pleaded." Trial Ct. Op., 6/29/22,

at 6 (citation omitted). Further, the trial court explained:

> Here, the legally operative facts upon which [Appellees'] Petition to Dissolve was brought were sufficiently plead in [Appellees'] Complaint and were sufficient to support a cause of action to dissolve the company. [Appellees] plead that [Appellants] attempted to execute [an] agreement[] that would remove [Appellees] from LSI in violation of the 2012 Operating Agreement and that the personal relations between the parties are dissentious. Further[,] facts to support dissolution were developed and litigated as the case progressed. Even if it was error for [the trial c]ourt to allow dissolution when that cause of action was not specifically pleaded in [Appellees'] Complaint, it was harmless error. [Appellants] were aware of legally operative facts at issue in this case and had an opportunity to prepare a defense and be heard in court on the matter of dissolution. As such, [the trial c]ourt's Order dissolving the company should not be reversed for this reason.

*Id.*

On this record, we conclude that Appellees pled sufficient operative facts

in their complaint to establish a cause of action for dissolution. In their

complaint, Appellees pleaded that the 2012 Operating Agreement controlled

the governance of LSI. Compl., 1/12/21, at ¶¶ 21, 59. Appellees complained

that Appellants were in breach of the 2012 Operating Agreement and asked

the trial court to enjoin Appellants from actions taken that were not in

conformity with the 2012 Operating Agreement, and to take further necessary

action at law and equity. *See id.* at ¶¶ 36, 46. Appellees alleged that

Appellants were attempting to wrest control over LSI such that it deprived

Appellees of their rights and property interests. *See id.* at ¶ 57. Appellees

further requested that the trial court impose a constructive trust to protect

Appellees' interests. *See id.* at ¶¶ 60, 61. As the trial court noted, it was evident that Appellees alleged that the operations of LSI were impracticable, the facts asserted a claim for winding up and dissolving LSI, and the trial court was permitted to take judicial notice of the relevant statute involved. *See* Trial Ct. Op., 6/29/22, at 6-7; *see also* 15 Pa.C.S. § 8871(a)(4)(ii). On this record, we conclude that the trial court did not err in considering the issue of dissolution and no relief is due.

Next, we address the propriety of the trial court's order dissolving LSI. Appellants argue that, even if the trial court was correct in finding that the 2012 Operating Agreement remains controlling and "*assum*[*ing*] *arguendo* that the 2012 Operating Agreement governs LSI's affairs," dissolving LSI was premature because of the ongoing conflicts among the parties, and that consistent with Section 7.11 of the 2012 Operating Agreement binding mediation is mandated, and that binding mediation has not occurred. Appellants' Brief at 40, 41-46.[7]

In addressing Appellants' mediation claim, the trial court concluded that the parties were "deadlocked," and that dissolution was warranted. The trial court considered that Bryan and Michael, as voting members each had 50%

---

[7] In their May 3, 2021, preliminary objection, Appellants specifically raised the mediation provisions. *See* Prelim. Obj., 5/3/21, at ¶¶ 7-15. Accordingly, Appellants did not waive their right to proceed through alternative dispute resolution. *See*, *e.g.*, *O'Donnell v. Hovnanian Enter., Inc.*, 29 A.3d 1183, 1187 (Pa. Super. 2011).

Voting Interest, and that the governance and decision-making of LSI was hopelessly deadlocked because they were engaged in highly contentious conflict. *See* Trial Ct. Op., 6/29/22, at 7-9. As such, the decision-making authority is split equally. *See id.* at 8; *see also Staiger v. Holohan*, 100 A.3d 622, 625 (Pa. Super. 2014) (finding the company was deadlocked where the voting shares were divided equally between two members, and when the two members disagreed, it resulted in a deadlock).

LSI is a Pennsylvania LLC and governed pursuant to the Pennsylvania Associations Code and Pennsylvania Uniform LLC Act. *See* 15 Pa.C.S. §§ 101-102; *see also* §§ 8102, 8811-8898 (addressing regulation, formation, and applicability to partnerships, LLCs, and corporate forms of organization). Section 8871 addresses dissolution of an LLC and provides as follows:

> **(a) General rule**.—A limited liability company is dissolved, and its activities and affairs shall be wound up, upon the occurrence of any of the following:
>
>> (1) An event or circumstance that the operating agreement states causes dissolution.
>>
>> (2) The consent of all the members.
>>
>> (3) The passage of 180 consecutive days after the company ceases to have any members unless before the end of the period:
>>
>>> (i) consent to admit at least one specified person as a member is given by transferees owning the rights to receive a majority of distributions as transferees at the time the consent is to be effective; and
>>>
>>> (ii) at least one person becomes a member in accordance with the consent.

(4) On application by a member, the entry by the court of an order dissolving the company on the grounds that:

(i) the conduct of all or substantially all the company's activities and affairs is unlawful;

(ii) it is not reasonably practicable to carry on the company's activities and affairs in conformity with the certificate of organization and the operating agreement; or

(iii) the managers or those members in control of the company:

(A) have acted, are acting, or will act in a manner that is illegal or fraudulent; or

(B) have acted or are acting in a manner that is oppressive and was, is or will be directly harmful to the applicant.

**(b) Other remedies**.—In a proceeding brought under subsection (a)(4)(iii)(B), the court may order a remedy other than dissolution.

15 Pa.C.S. § 8871(a)-(b).  Moreover, "[a] dissolved [LLC] shall wind up its activities and affairs, and the company continues after dissolution only for the purpose of winding up."  15 Pa.C.S. § 8872(a).

In the instant case, we have already concluded that the 2012 Operating Agreement remains in force, and the parties continue to be bound by its terms. *See* 15 Pa.C.S. §§ 8815, 8816(a).  With respect to dissolution, the 2012 Operating Agreement states:

(a) The Company shall be dissolved only upon the occurrence of any of the following events:

(1) by the written agreement of Members holding a Two-Thirds Interest;

- 34 -

(2) by an order of a court of competent jurisdiction in an action commenced by any Member in which the Member can show that:

(i) Except as set forth in **Section 7.11** of this Agreement, the Members are deadlocked in the management of the Company's affairs, and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted, because of the deadlock;

(ii) The Officers or other Members in control of the Company have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent;

(iii) There have been repeated, material breaches of the Agreement by the Company or by other Members or Officers; or

(iv) It is otherwise not reasonably practicable to carry on the business in conformity with the Operating Agreement.

Notwithstanding anything to the contrary in the Act, the Company shall not be dissolved upon the death, retirement, resignation, expulsion, bankruptcy or dissolution of an Equity Owner.

(b) As soon as possible following the occurrence of any of the events specified in **Section 12.1(a)** effecting the dissolution of the Company, the appropriate representative of the Company shall execute all documents required by the Act at the time of dissolution and file or record such statements with the appropriate officials.

2012 Operating Agreement at Section 12.1 (emphases in original).

The above-referenced Section 7.11 of the 2012 Operating Agreement

contemplates a deadlock and provides as follows:

7.11 Dispute Resolution for Members. In the event that the Members are deadlocked and cannot come to an agreement with respect to any decision of the Company (including any items referred to the Members pursuant to Section 5.15 of this Agreement [involving dispute resolution for officers]), the Members hereby agree to submit any and all such disputes between them to binding mediation in accordance with the

provisions set forth on Exhibit 7.11 attached hereto and made a part hereof. Any decision reached by the mediator shall be final and binding upon the Members.

2012 Operating Agreement at Section 7.11 (some formatting altered). As stated, Section 7.11 references Exhibit 7.11, which provides as follows:

EXHIBIT 7.11

MEDIATION PROVISIONS

1. The mediator for any and all disputes shall be [_____]. In the event [_____] is unavailable, the mediator shall be chosen in good faith by mutual agreement between the Members.

2. Each Member shall bear his, her or its own costs of the mediation, except that they will share equally all fees and expenses of the mediator. The mediator shall be compensated at a rate of [amount] per [hour/day].

3. The mediation shall be held at the office of the Company, or as the Members may otherwise mutually agree.

4. The mediator shall have the authority to impose a binding settlement on the Members, and will attempt to help them reach a satisfactory resolution of their disputes. The mediator is authorized to conduct joint and separate meetings with the Members and to make oral and written recommendations for settlement.

5. The information disclosed to the mediator by the Members or by witnesses during the mediation shall not be divulged by the mediator. All information, records, reports, or other documents received by the mediator shall be treated as confidential. The mediator shall not divulge nor be compelled by the Members to divulge such information, records, reports, or other documents, or to testify in regard to the mediation in any adversary proceeding or judicial forum.

6. There shall be no stenographic or other such record made of the mediation proceedings.

9. Any party may apply to the Mediator seeking injunctive relief until the mediation award is rendered or the controversy is otherwise resolved. Any party also may, without waiving any

remedy under the Amended and Restated Operating Agreement, seek from any court having jurisdiction any interim or provisional relief that is necessary to protect the rights or property of that party, pending the establishment of the mediation tribunal (or pending the mediation tribunal's determination of the merits of the controversy).

2012 Operating Agreement, Exhibit 7.11 (empty brackets in paragraph 1, omission of paragraph numbers 7 and 8 in original, and emphases omitted).

We reiterate that when the terms of an agreement are clear and unambiguous on their face, those terms are the best reflection of the intent of the parties. *See Kane*, 129 A.3d at 463. The Company Members, Bryan and Michael, each have 50% Voting Interest and have been unable to come to an agreement nor resolution concerning their disputes including the interests of Bryan, Eugene, and Marie, and Michael's interests and decisions in terms of the governance, organization, management, and the decision-making of LSI.

Further, the parties have filed additional legal actions in Pennsylvania and Florida and Appellants purported to amend LSI's operating agreement in 2021 to realign the parties' voting interests. Indeed, there are numerous disputes and ongoing contentious litigation in several forums among the parties. *See* Trial Ct. Op., 6/24/22, at 4 (citing *Toth v. Toth*, No. 50-2021-CA 003506-XXXX-MC (Fla. 15th Circuit Court, filed Mar. 16, 2021)); *see also* Trial Ct. Op., 6/29/22, at 2. Nevertheless, the binding mediation language is unequivocal and states that if "the Members are deadlocked and cannot come to an agreement with respect to any decision of the Company . . . the Members

hereby agree to submit any and all such disputes" to binding mediation. 2012 Operating Agreement at Section 7.11.

We recognize that Section 8871 of the Pennsylvania Uniform LLC Act states that a deadlock may lead to dissolution under certain circumstances. *See* 15 Pa.C.S. § 8871(a). However, after careful consideration, we conclude that at this juncture, the trial court's decision to dissolve LSI was premature because the 2012 Operating Agreement unambiguously mandates binding mediation, which has not yet occurred. *See* 2012 Operating Agreement at Sections 7.11, 12.1.

As noted, the parties previously engaged in **non-binding** mediation. *See* Trial Ct. Op., 6/29/22, at 11 n.10; *see also* N.T., 7/20/21, at 10; N.T., 2/10/22, at 94-95, 115; N.T., 3/11-16/22, at 92. The trial court concluded that "these attempts at resolution have proved unfruitful, reinforcing the determination that the parties are deadlocked." Trial Ct. Op., 6/29/22, at 11 n.10. However, although engaged in ongoing disputes, Appellants emphasize that the parties have not yet followed the requirements of Section 7.11 and participated in "binding" mediation. Appellants' Brief at 43-46.

On this record, we are constrained to conclude that the trial court erred in finding that there was a deadlock that could result in the dissolution of LSI. As discussed previously, the parties remain bound by the 2012 Operating Agreement which requires them to submit to binding mediation. However, the record reflects that the parties have not yet participated in **binding** mediation. *See* 15 Pa.C.S. §§ 8815, 8816(a). For these reasons, we vacate

the trial court's order on appeal at 403 WDA 2022 and remand the matter for further proceedings. On remand, the trial court shall direct the parties to select a mediator and to engage in binding mediation pursuant to the terms of the 2012 Operating Agreement.[8, 9]

_____

[8] We are cognizant that Appellees assert potential limitations presented by binding mediation. **See** Appellees' Brief at 42 (citing Interim Custodian's Report, 10/22/21). The Interim Custodian opined:

> Section 7.11 may offer some limited vehicle for deciding conflicts that arise among members, relating to decisions of the Company, but it does not encompass all of the deeper disputes among the Members. Section 7.11 is inapplicable to differences on whom to elect as Officers. The selection of Officers is the prerogative of the owners of the Voting Interests and is deeply divided between Michael and Bryan.

Interim Custodian's Report, 10/22/21, at ¶ 80. However, under the circumstances, the terms of the 2012 Operating Agreement are not discretionary and first require binding mediation. **See** 2012 Operating Agreement at Section 7.11. At this juncture, it is purely speculative to conclude what, if any, disputes may remain unresolved at the conclusion of binding mediation.

[9] The concurring and dissenting opinion (CDO) discussed the distinctions between decisions "of the company" and "about the company" addressed by the interim custodian, but concluded that Section 7.11 is not applicable to the instant disputes. Further, our learned colleague opined that even if Section 7.11 was applicable, further mediation is not necessary under the facts of this case due to the irreconcilable differences between the parties. **See** CDO at 7, 8 (quoting Interim Custodian's Findings of Fact and Conclusions of Law, 10/15/21, at ¶78).

Firstly, we understand the highly contentious and acrimonious nature of the disputes between the parties, and we do not seek to force a fruitless exercise of futility or a waste of judicial time and resources. On this record, it is undisputed that the interim custodian's conclusion that the instant disputes involve both decisions "of the company" and decisions "about the company."
*(Footnote Continued Next Page)*

**Appeal at 846 WDA 2022**

In light of our disposition of the appeal at 403 WDA 2022 that dissolution is premature and that this matter is remanded for binding mediation consistent with the 2012 Operating Agreement, we vacate the order on appeal at 846 WDA 2022, appointing a custodian. We vacate the order without

_____

Accordingly, because the parties are deadlocked over vociferous disputes involving decisions *of* the company, the Section 7.11 binding arbitration mandate of the 2012 Operating Agreement controls in that the parties explicitly agreed that "any and all" such disputes would be submitted to binding arbitration. 2012 Operating Agreement at Section 7.11. Therefore, at this juncture, despite the painful and convoluted procedural history of this case, it is premature to conclude that it is not feasible to carry out the business of LSI and speculative to conclude that binding mediation will be unsuccessful prior to binding mediation, which has not yet occurred. ***See*** 2012 Operating Agreement at Section 7.11; Section 12.1(a).

As noted in the CDO, this matter involves sophisticated parties and experienced counsel. ***See*** CDO at 9. Further, LSI continues to operate in some form in another state. ***See*** Trial Ct. Op., 6/29/22, at 1-2. Given these circumstances, it strains credulity to conclude that all hope is lost, and that no resolution can *ever* be reached among the parties based on their high level of business acumen and experience. Indeed, should binding mediation fail, the 2012 Operating Agreement provides an avenue for dissolution "[e]xcept as set forth in Section 7.11 of this Agreement." 2012 Operating Agreement at Section 12.1(a)(2)(i). As stated, disputes involving decisions of the company as contemplated by Section 7.11 remain unresolved. For these reasons, the finality of the judicial mandate of dissolution is premature because it is undisputed that the parties are deadlocked over decisions of the company which are within the purview of Section 7.11. Importantly, the parties explicitly agreed to submit to binding mediation to resolve these types of disputes such that they are not being forced to engage in further unanticipated legal process. Accordingly, time and resources would not be wasted in carrying out Agreement provisions crafted by the instant business parties with experienced counsel who no doubt considered the implications of convening binding mediation in the event of deadlock over disputes of the company. ***See*** 2012 Operating Agreement at Section 7.11.

prejudice for the trial court to revisit the issue of appointing a custodian should the trial court, following binding mediation, conclude that the parties are deadlocked and find that dissolution is appropriate. Accordingly, we need not reach the parties' arguments raised on the appeal at 846 WDA 2022, concerning the appointment of the custodian.

## Conclusion

For the reasons set forth above, we affirm the orders on appeal at 266 WDA 2022 and 267 WDA 2022; vacate the order at 403 WDA 2022 and remand for further proceedings consistent with this opinion;[10] and vacate the order at 846 WDA 2022.[11] Jurisdiction is relinquished.

Judge Pellegrini joins the opinion.

Judge Olson files a concurring/dissenting opinion.

---

[10] In light of our disposition of the appeal at 403 WDA 2022 vacating and remanding for binding mediation pursuant to the 2012 Operating Agreement, Appellants' Application for Remand, filed on February 24, 2023, is DENIED as moot.

[11] This Court's June 16, 2022 stay order is hereby LIFTED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/1/2023