J-A06019-23
J-A06020-23

2023 PA Super 145

| | | |
|---|---|---|
| MICHAEL D. TOTH AND LINAWATI TOTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN E. TOTH, EUGENE W. TOTH, MARIE TOTH, AND LEARNING SCIENCES INTERNATIONAL, LLC | : | No. 266 WDA 2022 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BRYAN E. TOTH, EUGENE W. TOTH, AND MARIE TOTH | : | |

Appeal from the Order Entered February 15, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-000372

| | | |
|---|---|---|
| MICHAEL D. TOTH AND LINAWATI TOTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN E. TOTH, EUGENE W. TOTH, MARIE TOTH, AND LEARNING SCIENCES INTERNATIONAL, LLC | : | No. 267 WDA 2022 |
| | : | |
| | : | |
| APPEAL OF: BRYAN E. TOTH, EUGENE W. TOTH, AND MARIE TOTH | : | |

Appeal from the Order Entered February 15, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-000372

| | | |
|---|---|---|
| MICHAEL D. TOTH AND LINAWATI TOTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |

J-A06019-23
J-A06020-23

|  | : |  |
| --- | --- | --- |
| BRYAN E. TOTH, EUGENE W. TOTH, | : |  |
| MARIE TOTH, AND LEARNING | : | No. 403 WDA 2022 |
| SCIENCES INTERNATIONAL, LLC | : |  |
|  | : |  |
|  | : |  |
| APPEAL OF: BRYAN E. TOTH, | : |  |
| EUGENE W. TOTH, AND MARIE TOTH | : |  |

Appeal from the Order Entered April 5, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): G.D. 21-000372

---

|  | : |  |
| --- | --- | --- |
| MICHAEL D. TOTH AND LINAWATI | : | IN THE SUPERIOR COURT OF |
| TOTH | : | PENNSYLVANIA |
|  | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| BRYAN E. TOTH, EUGENE W. TOTH | : | No. 846 WDA 2022 |
| MARIE TOTH, AND LEARNING | : |  |
| SCIENCES INTERNATIONAL, LLC | : |  |
|  | : |  |
|  | : |  |
| APPEAL OF: BRYN E. TOTH, | : |  |
| EUGENE W. TOTH, AND MARIE TOTH | : |  |

Appeal from the Order Entered July 21, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No.(s): GD-21-000372

BEFORE: OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

CONCURRING/DISSENTING OPINION BY OLSON, J.:

**FILED: August 1, 2023**

---

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

I agree with the learned Majority that the trial court did not err in granting partial summary judgment relief in the form of a declaratory judgment in favor of Appellees Michael D. Toth ("Michael") and Linawati Toth. Thus, I am in agreement with the Majority's decision to affirm the trial court's orders of February 15, 2022 that granted partial summary judgment in favor of Appellees (266 WDA 2022) and denied the motion for summary judgment filed by Appellants Bryan E. Toth ("Bryan"), Eugene W. Toth ("Eugene"), and Marie Toth ("Marie") (267 WDA 2022). I part company with my learned colleagues as to the appeals filed by Appellants at 403 WDA 2022 (April 5, 2022 order granting Appellees' petition to dissolve Learning Sciences International, LLC ("LSI")) and 846 WDA 2022 (July 21, 2022 order appointing a custodian for LSI). I do not agree that this case should be remanded for the parties to engage in further mediation. Moreover, I believe that the trial court did not abuse its discretion in ordering the dissolution of LSI and appointing a custodian. Therefore, I would affirm the trial court's orders of April 5, 2022 and July 21, 2022.

As the Majority correctly notes, the 2012 Operating Agreement which controls the operation of LSI provides in pertinent part:

12.1  Dissolution

(a) The Company shall be dissolved only upon the occurrence of any of the following events:

**\*\*\*\***

- 3 -

(2)     by an order of a court of competent jurisdiction in any action commenced by any Member in which the Member can show that:

(i)     Except as set forth in **Section 7.11** of this Agreement, the Members are deadlocked in the management of the Company's affairs, and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted, because of the deadlock;

(ii)    The Officers or other Members in control of the Company have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent;

(iii)    There have been repeated, material breaches of the Agreement by the Company or by other Members or Officers; or

(iv)    It is otherwise not reasonably practicable to carry on the business in conformity with the Operating Agreement.

2012 Operating Agreement, Section 12.1 (emphasis in original).

Section 7.11 of the 2012 Operating Agreement provides:

7.11 <u>Dispute Resolution for Members</u>.  In the event that the Members are deadlocked and cannot come to an agreement with respect to any decision of the Company (including any items referred to the Members pursuant to Section 5.15 of this Agreement [involving dispute resolution for officers]), the Members hereby agree to submit any and all such disputes between them to binding mediation. . . . Any decision reached by the mediator shall be final and binding upon the Members.

*Id.* at Section 7.11.

The Majority concludes that the terms of the 2012 Operating Agreement are clear and unambiguous and expressly provide that binding mediation is required to resolve the dispute between the parties; thus, "the trial court's

decision to dissolve LSI was premature because the 2012 Operating Agreement unambiguously mandates binding mediation, which has not yet occurred." Majority Opinion at 38. I agree that the terms of an agreement, if clear and unambiguous, are the best reflection of the parties' intent. ***Commonwealth ex rel. Kane v. UPMC***, 129 A.3d 441, 463 (Pa. 2015). I also agree that the 2012 Operating Agreement provides that binding mediation is required in the event of a deadlock between members with respect to "any decision of the Company". 2012 Operating Agreement, Section 7.11. However, the disputes between the parties involve more than "decisions of the Company" as required by section 7.11 of the 2012 Operating Agreement. On the contrary, the disputes go to the actual corporate structure that LSI will follow going forward, the manner in which LSI will be governed and the identity of the persons who will serve as LSI's officers, including president and chief executive officer. Additionally, under the unique facts and circumstances of this case and its lengthy history, I believe that further mediation will do nothing but cause additional expense, delay and acrimony resulting in continuing injury to LSI. Thus, I do not believe that additional efforts to mediate is appropriate in this case.

On August 4, 2021, after months of extensive litigation between the parties in both Pennsylvania and Florida, the trial court entered an order

appointing John R. McGinley, Jr., Esquire[1] as an interim custodian of LSI. Attorney McGinley was tasked, in part, with making findings of fact and conclusions of law "as to whether the Members [of LSI] are deadlocked in the management of [LSI's] affairs and/or whether it is reasonably practicable for the Members of LSI to carry on the business of LSI in conformity with the provisions of LSI's 2012 Operating Agreement". Trial Court Order, 8/4/21, at ¶ 2. After an extensive review of relevant documents, deposition transcripts, and controlling law, interviews of key individuals and employees, and conversations with counsel for the parties, Attorney McGinley submitted findings of facts and conclusions of law to the trial court on October 15, 2021. The findings of fact and conclusions of law rendered by Attorney McGinley included the following:

49. The Custodian concludes that each side is intractable in its belief and in good faith differ on how to manage LSI, conduct its business and whether Michael should remain the CEO and President of LSI. The differences have resulted in the litigation before [the trial court], litigation in Florida and efforts to replace Michael and reconstitute LSI as a manager-managed, Florida limited liability company.

50. The holders of the "Voting Interests" of LSI [*i.e.,* Bryan and Michael] are deadlocked. Their disagreements are not over issues that arise in the day-to-day operation of a business, but rather go to the core issues such as the governing law applicable to a limited liability company, the allocation of voting rights, hence power among members, and the primary areas of corporate investment.

\* \* \* \* \* \* \* \*

_____

[1] Attorney McGinley is an extremely experienced and highly regarded attorney who has practiced in the realm of complex commercial litigation for decades.

71. The Custodian concludes that Michael and Bryan, the members of LSI of who have Voting Interests, are deadlocked. The deadlock manifests itself at two levels. They are deadlocked on the appropriate business plan for LSI and they are deadlocked on the election of Officers. Bryan and Michael, the holders of the Voting Interests, cannot agree on the Officers of LSI or who should direct its day-to-day business affairs. Bryan, Eugene and Marie's attempt to oust Michael as the CEO and President and their attempt to convert LSI to a manger-managed, Florida limited liability company and amend the 2012 Operating Agreement, further evidences this dysfunction and deadlock.

72. Accordingly, the Custodian concludes as follows:

> The Members who control Voting Interests decisions are deadlocked – neither Michael nor Bryan will yield to the other and comity among the Members has dissolved.

\* \* \* \* \* \* \*

77. Section 7.11 of the 2012 Operating Agreement also contemplates a dispute resolution mechanism for Members. It provides:

> In the event that the Members are deadlocked and cannot come to an agreement **with respect to any decision of the Company** . . ., the Members hereby agree to submit any and all such disputes between them to binding mediation ….

78. The predicate for disagreement among members is limited to a "decision of the Company." While some of the disagreements in this case deal with the direction of [LSI] and thus its business plans, others are disagreements not with respect to [LSI] but rather disagreements in their capacity as Members. The architecture of the dispute resolution may aid in connection with certain of the disputes among the parties but is of little help with regard to the core disputes among the Members. For example, the decision to advocate a change from a member-managed limited liability company, to a manager-managed limited liability company is a decision taken as a member. It is a governance

decision adopted by the members rather than a "decision of the Company." Indeed, that analysis may have been the reason why in the first instance Bryan, Eugene and Marie attempted to oust Michael and amend the 2012 Operating Agreement rather than take their concerns to a mediator pursuant to section 7.11 of the 2012 Operating Agreement.

\* \* \* \* \* \* \*

80    Section 7.11 may offer some limited vehicle for deciding conflicts that arise among members, relating to the decisions of the Company, but it does not encompass all of the deeper disputes among the Members. Section 7.11 is inapplicable to differences on whom to elect as Officers. The selection of Officers is the prerogative of the owners of the Voting Interests and its deeply divided between Michael and Bryan.

\* \* \* \* \* \* \*

93.    The parties have attempted a conventional mediation with Attorney David White, an accomplished and respected mediator. That effort failed.

94.    Based upon the diverging viewpoints among the holders of the Voting Interests, the Custodian finds that there is an irreconcilable deadlock on certain operational issues "with respect to any decision of the Company" within the meaning of section 7.11 of the 2012 Operating Agreement. If such operational disputes constituted exclusive issues among the parties, such issues would be a matter for mediation under the 2012 Operating Agreement. In this case, day-to-day decisions are not the primary issues.

Interim Custodian's Findings of Fact and Conclusions of Law, 10/15/21 (emphasis in original). As astutely recognized by Attorney McGinley, section 7.11 of the 2012 Operating Agreement that calls for binding mediation applies when the members are deadlocked over "any decision *of* the Company" as opposed to any decision *about* the Company, such as the corporate

- 8 -

governance structure by which LSI will operate in the future. As such, I do not believe that section 7.11 of the controlling Operating Agreement mandates binding mediation with respect to the disputes at issue.

Even if section 7.11 is applicable, further mediation is not warranted under the facts of this case. In its 1925(a) opinion in support of its order directing the dissolution of LSI, the trial court acknowledged Attorney McGinley's finding of "irreconcilable differences that will only cause harm to [LSI] if continued to exist." Trial Court Opinion, 6/29/22, at 3. Additionally, the trial court found:

> Article 7.11 of the 2012 Operating Agreement requires that the members attempt to resolve any deadlock through binding mediation before seeing a court[-]ordered dissolution. Although [Appellants] contend otherwise, the parties have sought to resolve their disputes through formal mediation and informal settlement discussions throughout this litigation. None of these attempts to resolve the parties' differences amicably proved fruitful and have only highlighted the intractable positions of the parties with respect to the management and ownership of LSI.

*Id.* at 4. It is clear from the record that, in this case, further efforts to mediate to resolve this matter would be a waste of time and resources and will merely result in further delay and harm to LSI. These are sophisticated parties with sophisticated and experienced counsel. For almost three years, the parties have engaged in extensive litigation in two states which has included formal mediation with an experienced mediator, ongoing settlement discussions, and exhaustive work with the interim custodian, all for naught. Even if the parties are forced to again mediate, I predict that the ongoing dispute between

Appellants and Appellees will continue with the losing party or parties seeking further court intervention to disallow the mediator's binding resolution. Accordingly, I would not remand this case for further mediation pursuant to Section 12.1(a)(2)(i) of the 2012 Operating Agreement. Instead, I would affirm the trial court's orders directing the dissolution of LSI and the appointment of a custodian for the reasons set forth in the trial court's thorough and well-reasoned opinions of June 29, 2022 and September 2, 2022.[2]

---

[2] As additional support for affirming the trial court's order of dissolution without further mediation, I note the following. Section 12.1 of the 2012 Operating Agreement does not only provide that LSI shall be dissolved by a court if there is a deadlock causing irreparable injury to the company (as set forth in Section 12.1(a)(2)(i)), the Agreement also provides that LSI shall be dissolved by an order of court if the Members acted oppressively, breached the 2012 Operating Agreement, or "[i]t is otherwise not reasonably practicable to carry on the business in conformity with the Operating Agreement." 2012 Operating Agreement, Section 12.1(a)(2)(ii), (iii), (iv). Nothing in these subsections mandates that binding mediation be conducted by the parties before the court may order dissolution. The trial court found that Appellees (as Members of LSI) breached the 2012 Operating Agreement and breached their fiduciary duties. Trial Court Opinion, 6/29/22, at 7-11. The court also found that Appellees "created an atmosphere of hostility from the start" and engaged in "violative conduct." *Id.* at 10, 11. Additionally, the trial court found that the actions of the parties caused harm to LSI and that any other form of relief, other than dissolution, would not be in LSI's best interests. *Id.* at 12-17. The court concluded it would be impracticable for LSI to continue to operate as contemplated by the 2012 Operating Agreement. *Id.* at 13. ("LSI is not only at risk of revocable financial loss, but irrevocable loss of intellectual property, talent, employee satisfaction, and reputation. In such circumstances, a finding of deadlock or impracticability is appropriate.") Thus, under Section 12.1(a)(2)(ii), (iii) and (iv) of the 2012 Operating Agreement, the trial court could order dissolution without binding mediation.